Dwayne SILVERS, Appellant–Plaintiff,

v.

Lawrence J. BRODEUR, Appellee–Defendant.

No. 53A01–9612–CV–414.

Court of Appeals of Indiana.

July 11, 1997.

---

Jon R. Pactor, Indianapolis, for Appellant–Plaintiff.

Ben S. Hoff, III, Nashville, for Appellee–Defendant.

## OPINION

BAKER, Judge.

Appellant-plaintiff Dwayne Silvers requests this court to consider when the statute of limitations begins to run on a criminal defendant's claim for malpractice against his defense attorney. Specifically, Silvers appeals the trial court's grant of summary judgment in favor of his attorney, appellee-defendant Lawrence J. Brodeur, on the grounds that the statute of limitations had

elapsed prior to Silvers' filing of his legal malpractice complaint.

## FACTS

The facts most favorable to Silvers, the non-movant, reveal that in June of 1983, Silvers was charged with murder and two counts of attempted murder. Shortly thereafter, his trial date was set for August 17, 1983. On August 8, 1983, Brodeur contacted Silvers and began negotiating to represent him. Silvers agreed, fired his original counsel and contracted with Brodeur. Two days later, Brodeur orally requested a continuance of Silvers' trial date, which was denied. Brodeur then advised Silvers to plead guilty to avoid the possibility of receiving a 120–year sentence if he was convicted on all charges. On August 12, 1983, Silvers pled guilty and was sentenced to thirty-five years imprisonment.

Thereafter, on August 23, 1985, Silvers filed a complaint against Brodeur with the Indiana Supreme Court Disciplinary Commission in which he alleged that Brodeur had negligently represented him. At approximately the same time, Silvers filed a petition for post-conviction relief, arguing that his guilty plea should be set aside because it was not entered knowingly, intelligently and voluntarily due to his counsel's ineffectiveness. The post-conviction court agreed and, on December 20, 1990, set aside Silvers' guilty plea. Silvers was subsequently retried and, in 1991, was convicted of criminal recklessness. However, because Silvers had already served the maximum sentence for a conviction for criminal recklessness, he was released.

On August 17, 1992, Silvers filed a complaint against Brodeur for legal malpractice. In his answer, Brodeur argued that the statute of limitations on Silvers' claim had begun to run on the date Silvers filed his complaint with the Disciplinary Commission. Brodeur then filed a motion for summary judgment on the basis of the statute of limitations which, following a hearing, the trial court granted. Silvers now appeals.

## DISCUSSION AND DECISION [1]

Silvers challenges the trial court's entry of summary judgment in favor of Brodeur. In particular, he contends that the trial court erred in determining that the statute of limitations for his legal malpractice claim began to run on the day he discovered the alleged malpractice, which was the day he filed his complaint with the Disciplinary Commission. Instead, Silvers argues that the statute of limitations did not begin to run until, at the earliest, his petition for post-conviction relief was granted.

In reviewing the grant of summary judgment, we apply the same standard as the trial court. Specifically, we must determine whether genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. *Seufert v. RWB Medical Income Properties I Ltd. Partnership*, 649 N.E.2d 1070, 1072 (Ind.Ct. App.1995).

In Indiana, statutes of limitation are favored because they afford security against stale claims and promote the peace and welfare of society. *A.M. v. Roman Catholic Church*, 669 N.E.2d 1034, 1037 (Ind. Ct.App.1996), *trans. denied.* They are enacted upon the presumption that one having a well-founded claim will not delay in enforcing it. *Id.* The defense of a statute of limitation is peculiarly suitable as a basis for summary judgment. *Id.*

The statute of limitation for a claim of legal malpractice is two years. IND. CODE § 34–1–2–2; *Lambert v. Stark*, 484 N.E.2d 630 (Ind.Ct.App.1985), *trans. denied.* Further, legal malpractice actions are subject to the "discovery rule," which provides that the statute of limitations does not begin to run until such time as the plaintiff knows, or in the exercise of ordinary diligence could have discovered, that he had sustained an injury as the result of the tortious act of another. *Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind.1992). For a cause of action to accrue, it is not necessary that the full extent

1. We held oral argument in this cause on June 18, 1997, in Indianapolis.

of damage be known or even ascertainable, but only that some ascertainable damage has occurred. *Doe v. United Methodist Church,* 673 N.E.2d 839, 842 (Ind.Ct.App.1996), *trans. denied.*

Another panel of this court has applied the discovery rule to a criminal defendant's legal malpractice action against his former defense attorney. In *Diaz v. Carpenter,* 650 N.E.2d 688 (Ind.Ct.App.1995), *cert. denied* —— U.S. ——, 116 S.Ct. 572, 133 L.Ed.2d 496 (1995), we held that the criminal defendant's malpractice action was barred by the statute of limitations because it was not commenced within two years of his discovery of the alleged malpractice. Specifically, we determined that the criminal defendant, who claimed that his appellate attorney failed to include an issue in his appellate brief, learned of the alleged malpractice at the latest when he read and received the brief. *Id.* at 691. Because the criminal defendant did not file his malpractice action until almost three years later, we determined that his complaint was barred by the statute of limitations. *Id.*

In the instant case, the record reveals that Silvers filed his complaint against Brodeur with the Disciplinary Commission in 1985. In pertinent part, the complaint provided as follows:

ITEM 1. In order to convicne [sic] my parents and myself to hire him, He intimated that the Judge was racialy [sic] prejudiced, by stateing [sic] that I should not have a black attorney in that county because [the Judge] would certainly give me the maximum possible sentence if I retained my present black lawyer, a Mr. Alphonso Mann of Bloomington.

ITEM 2. He slandered Mr. Mann, saying that he could do more in one day than Mr. mann [sic] had done in the whole three months he had been retained.

ITEM 3. He committed Fraud, giving us a phony background, saying that his "particular field of expertise" was murder cases, but we discovered that check forgery was the "heaviest" case he had handled to date.

ITEM 4. He assured me that if I accepted, that after five or six years, the Department of Correction would percieve [sic] that I was not a violent person, and considering all the money I was saveing [sic] the county, I would'nt [sic] have to do more than give [sic] (5) to ten (10) years at the most.

ITEM 5. He assured me that I would probably go to a minimum security institution because of my age, nameing [sic] I.Y.C.

ITEM 6. He said that the prosecutors views were that I should not spend my life incarcerated, and believed it to be a freak accident.

ITEM 7. After two hours of high pressure "drilling" in wich [sic] he kept insistantly [sic] repeating his false promises, he told me he had no time to prepare for the trail [sic] saying that the best he could do for me, was the plea bargain, because two days was not enough time, him being new to the case. I told him to file for continuence [sic], but he said he had already done that and been denied. Later, we discovered this was a lie, because no record exsisted [sic] of any motions being filed whatsoever. Not knowing any better, I accepted.

Record at 37–38. In sum, this complaint alleges that Silvers employed Brodeur, that Brodeur acted negligently and that Silvers had suffered an injury as a result of Brodeur's negligence. By filing the complaint, then, it is clear that Silvers was aware that he had a cause of action against Brodeur in 1985. *See Hacker v. Holland,* 570 N.E.2d 951 (Ind.Ct.App.1991) (to support claim of legal malpractice, plaintiff must show that he employed attorney, attorney failed to exercise ordinary skill and knowledge and failure proximately caused plaintiff damage), *trans. denied.* Pursuant to the discovery rule, therefore, Silvers' 1992 civil malpractice action is barred by the statute of limitations.

Nevertheless, Silvers contends that his cause of action for legal malpractice did not accrue, and the statute of limitations did not begin to run, until his conviction was set aside by the post-conviction court on December 20, 1990. In particular, Silvers argues

that without the nullification of his conviction, he could not prove damages or causation and, therefore, could not establish a claim for legal malpractice. Further, Silvers equates his malpractice claim with that of malicious prosecution, which does not accrue until after the plaintiff successfully defends a claim asserted against him by the defendant. *See Butt v. McEvoy,* 669 N.E.2d 1015, 1017 (Ind. Ct.App.1996) (claim for malicious prosecution requires proof that defendant instituted proceedings against plaintiff, defendant acted with malice in doing so, prosecution was initiated without probable cause and prosecution terminated in plaintiff's favor). Thus, Silvers requests this court to abandon the rule applied in *Diaz,* and to adopt an exception to the traditional discovery rule for cases involving a convicted defendant's legal malpractice complaint.

In support of his contention, Silvers cites to the decisions of various jurisdictions, the majority of which hold that a plaintiff's cause of action for legal malpractice against his former criminal defense attorney does not accrue until the plaintiff is exonerated or has otherwise successfully proven his innocence. For example, in *Stevens v. Bispham,* 316 Or. 221, 851 P.2d 556 (1993), the Supreme Court of Oregon held that a criminal defendant's claim of malpractice against his attorney did not accrue and, thus, the statute of limitations did not begin to run, until the defendant had been exonerated of the criminal offense through either direct appeal, post-conviction relief proceedings or otherwise. In particular, the court determined that until a defendant had been exonerated, he could not show that he had been harmed by any alleged malpractice. *Id.* 851 P.2d at 561–62.

In view of the extensive statutory provisions already in place for the protection of convicted offenders, we think that it would be inappropriate to treat victims of alleged negligence by defense counsel as having been "harmed," for the purpose of maintaining a legal malpractice action in cases like this, unless they show that their counsel failed to meet the established standards in a way that would make post-conviction relief appropriate.

*Id.* at 562.[2] The court further noted that permitting a criminal defendant to litigate his attorney's malpractice without first being exonerated of the crime would permit "relitigation of a matter that is supposed to be settled." *Id.*

Similarly, in *Shaw v. State, Dept. of Admin., PDA,* 816 P.2d 1358 (Alaska 1991), the Supreme Court of Alaska determined that a convicted criminal defendant was not permitted to file a claim for legal malpractice against his defense attorney until he had obtained post-conviction relief. As a result, the court held that "[g]iven that obtaining such relief will remain uncertain until actually granted, the statute of limitations for filing legal malpractice claims must be tolled until such relief is granted." *Id.* at 1360.

In addition to Oregon and Alaska, many other jurisdictions have held that the statute of limitations does not begin to run, and an action for legal malpractice does not accrue, until a criminal defendant receives relief from his conviction. *See Day v. Zubel,* 112 Nev. 972, 922 P.2d 536 (1996) (statute of limitations began to run when final termination of criminal proceedings occurred and charges against defendant were dismissed with prejudice); *Hines v. Davidson,* 489 So.2d 572, 573 (Ala.1986) (complaint for legal malpractice insufficient in absence of averment that conviction was caused by attorney's negligence and that but for negligence, defendant would have been acquitted). Several courts have even gone farther, requiring a defendant, as a prerequisite to maintaining a legal malpractice action, to prove that he is innocent of the crime for which he was convicted. *See Glenn v. Aiken,* 409 Mass. 699, 569 N.E.2d 783, 788 (1991) (to justify recovery, criminal defendant must prove by preponderance of the evidence not only that his attorney was negligent, but also that he is

**2.** Interestingly, the *Stevens* court determined that a criminal defendant suffers "harm" for the purpose of bringing a legal malpractice action at that moment the defendant obtains relief from harm, i.e. when he is exonerated of the underlying conviction.

innocent of the crime charged); *Carmel v. Lunney*, 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126, 1128 (1987) (if defendant cannot assert innocence, public policy prevents maintenance of malpractice action against attorney).

In general, the courts which have determined that the statute of limitations for legal malpractice claims does not accrue until after the defendant receives relief from the conviction have done so for three reasons. First, courts have cited concerns of judicial economy, including the fact that many issues litigated in post-conviction proceedings will be duplicated in later malpractice proceedings. *Shaw*, 816 P.2d at 1361. Similarly, courts have noted that requiring post-conviction relief as a prerequisite to malpractice actions allows for the application of collateral estoppel, should post-conviction relief be denied. *Id.*; *see also Schlumm v. Terrence J. O'Hagan, P.C.*, 173 Mich.App. 345, 433 N.W.2d 839, 845 (1988) ("[w]hen a full and fair determination has been made in the previous criminal action that the client received effective assistance of counsel, the defendant-attorney in a subsequent civil malpractice action brought by the same client may defensively assert collateral estoppel as a bar."), *appeal denied.*

A second reason cited in support of requiring successful relief from a conviction prior to a legal malpractice action is the general nature of criminal as opposed to civil proceedings. In particular, courts have noted that criminal proceedings involve constitutional and procedural safeguards not found in civil proceedings, including protections against incompetent performance. As a result, courts have found it inappropriate to grant civil relief to a criminal defendant unless that defendant would also be entitled to relief under the constitutional and statutory provisions designed for his or her protection. *Stevens*, 851 P.2d at 562; *see also Carmel*, 518 N.Y.S.2d 605, 511 N.E.2d at 1128 (public policy aspects of criminal proceedings, including safeguards designed to maintain integrity of judicial system and protect criminal defendant from over-reaching governmental actions, make criminal malpractice actions unique and require different pleadings and rules from those normally applied in malpractice actions).

Finally, courts have cited various public policy arguments in support of the requirement of exoneration as a prerequisite to a legal malpractice action. In particular, courts have held, as a matter of public policy, that the proximate cause of a defendant's conviction is his or her commission of a criminal act, not the malpractice of an attorney. *See Peeler v. Hughes & Luce*, 909 S.W.2d 494, 498 (Tex.1995) ("We therefore hold that, as a matter of law, it is the illegal conduct rather than the negligence of a convict's counsel that is the cause in fact of any injuries flowing from the conviction, unless the conviction has been overturned."). Similarly, courts have held that a convicted defendant should be precluded from profiting from his or her own criminal act by suing his or her attorney. *See Glenn*, 569 N.E.2d at 788 ("The underpinnings of common law tort liability, compensation and deterrence, do not support a rule that allows recovery to one who is guilty of the underlying criminal charge.").

In contrast to these jurisdictions, two states have specifically rejected the exoneration or innocence requirement imposed by the majority. In *Krahn v. Kinney*, 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989), the Supreme Court of Ohio held that a criminal defendant did not have to allege the reversal of her conviction in order to state a cause of action for legal malpractice. In coming to this conclusion, the court noted the inequity of requiring a criminal defendant to obtain a reversal of her conviction prior to bringing a malpractice action as demonstrated by the facts of the case, where the attorney failed to relate the prosecutor's offer of a plea bargain to his client.

Krahn's claim is based in part on Kinney's alleged failure to communicate the prosecutor's offer. Consequently, Krahn was forced into the situation of having to plead to a more serious charge or risk a still

greater conviction and sentence. Krahn may have made a valid plea on the day of trial, but she would have been better served had she accepted the earlier bargain. As aptly stated by the court of appeals, the injury in such a situation 'is not a bungled opportunity for vindication, but a lost opportunity to minimize her criminal record.'

*Id.* 538 N.E.2d at 1061.

Similarly, in *Jepson v. Stubbs,* 555 S.W.2d 307 (Mo.1977), the Supreme Court of Missouri rejected a criminal defendant's argument that the statute of limitations for his legal malpractice action against his former defense attorney should be tolled until the date his underlying conviction was set aside. The court explained the reason for its holding as follows:

A hypothetical example will illustrate. Suppose that plaintiff in this suit had been sued for damages for negligent conduct in operating his car and defendant attorney advised him that he had no defense and should confess judgment. Suppose further that plaintiff followed his attorney's advice and confessed judgment and then paid it. Assume finally that it developed subsequently that the attorney had not investigated the facts or the law and was clearly wrong in his advice. The confession of liability and the resulting judgment would at least imply a finding that defendant knowingly recognized and admitted his negligence and his liability. However, contrary to plaintiff's theory regarding collateral estoppel, it would not be a condition to a suit against the attorney that plaintiff somehow have set aside the prior judgment finding him negligent and liable in damages. Plaintiff could sue [the attorney] based on his negligent conduct and would not be collaterally estopped from bringing the suit by the judgment that he was negligent and liable to the one who sued him. If plaintiff in this hypothetical situation could prove to the jury that the attorney negligently represented and advised him and that he relied thereon and confessed judgment based on the attor-

ney's advice, he would have proved that which would be necessary for him to recover.

*Id.* at 313–14. Thus, the court held that the existence of a conviction would not collaterally estop a criminal defendant from bringing a malpractice suit against his attorney. *Id.* at 314.

Having considered these various opinions and the policies which support them, it is now our task to determine which solution, if any, should be applied here. As noted previously, statutes of limitation are favored in Indiana because they afford security against stale claims and promote the peace and welfare of society. *A.M.,* 669 N.E.2d at 1037. Specifically, statutes of limitation are designed to encourage the prompt presentation of claims and to assure fairness to defendants. *Holiday v. Kinslow,* 659 N.E.2d 647, 651 (Ind.Ct.App.1995). The limitations period also ensures that defendants receive formal, seasonable notice of claims. *Id.* However, the harshness of rules which limit a party's time to bring a claim has been softened by the discovery rule, which tolls the running of the statute of limitations until a party either knows, or should have known, about his injury.

Although supported by compelling policy concerns, the approach taken by many other jurisdictions regarding the statute of limitations for legal malpractice actions does nothing to further the goals of prompt presentation of claims or seasonable notice to defendants. Instead, the majority's approach, which tolls the statute of limitations until the defendant has been exonerated of his underlying conviction, essentially permits lawsuits on the basis of an attorney's negligence for an indefinite period of time. As Justice Unis of the Supreme Court of Oregon noted in his concurring opinion in *Stevens:*

Under the majority's "no-exoneration/no-harm" rule, claims by convicted persons for legal malpractice may never be stale, because exoneration of the criminal offense through reversal or vacation after one

month or after three decades may suddenly cause the claim to accrue.

*Stevens,* 851 P.2d at 571–72.

Additionally, the approach of tolling the statute of limitations until exoneration imposes a considerable hardship upon criminal defendants. Specifically, by requiring proof of exoneration, states have denied many criminal defendants a legal malpractice action. For example, defendants who are convicted but given short sentences will be forced to pursue an appeal or post-conviction relief, even if the relief is not necessary for any other purpose, in order to pursue a legal malpractice complaint. Further, criminal defendants who are harmed by their attorneys' negligence in ways other than conviction, such as by the imposition of lengthier sentences, will be completely without relief. *See Stevens,* 851 P.2d at 574 (Unis, J. concurring) (majority fails to account for fact that there is no necessary and direct link between not prevailing in case and existence of legal malpractice claim); *Peeler,* 909 S.W.2d at 501–502 (Phillips, C.J., dissenting) (actual innocence of convicted defendant to whom attorney failed to convey offer of transactional immunity is irrelevant to question of whether attorney's conduct resulted in indictment and conviction). Finally, a rule requiring exoneration or other relief from conviction denies relief to those persons who most need it: those defendants who, by virtue of their attorneys' malpractice, are unable to challenge their criminal convictions. *See Adkins v. Dixon,* 253 Va. 275, 482 S.E.2d 797 (1997) (criminal defendant precluded from bringing malpractice action against attorney because he had not been granted post-conviction relief, despite fact that post-conviction relief was unavailable because attorney failed to raise certain issues in direct appeal).

We also note that an attempt to establish an easy, bright-line test for determining the accrual of the statute of limitations by requiring exoneration fails in its application. In particular, those states which require exoneration do not specify at what point a criminal defendant is exonerated: when he achieves successful post-conviction relief, when he is retried and a different result is achieved, or when he can no longer be retried for the same crime. To simply require successful post-conviction relief ignores the fact that a defendant may be retried and convicted of the same or a similar crime. Similarly, some defendants will never be retried and, therefore, will never obtain a different result. Finally, to prohibit a malpractice claim until a criminal defendant can no longer be tried for the crime would, among other problems, essentially deny relief for those previously convicted of murder, as murder has no statute of limitations.[3]

In light of these problems, we decline Silvers' invitation to adopt the approach taken by many other states in Indiana. Instead, we believe that the well-settled discovery rule should govern the timeliness of legal malpractice actions by criminal defendants. Thus, a criminal defendant is required to file his malpractice action within two years of discovering the malpractice.[4] This rule meets the dual goals of permitting criminal defendants to file claims against their attorneys when they become aware that they have suffered harm, yet relieves attorneys from the prospect of unlimited and unending liability. Further, the discovery rule still allows the application of collateral estoppel in those cases in which a post-conviction or appellate court has determined the issue of a criminal defense attorney's effectiveness. *See Belford v. McHale Cook & Welch,* 648 N.E.2d 1241, 1246 (Ind.Ct.App.1995) (recognizing application of collateral estoppel in legal malpractice action when federal court had already determined that counsel was not ineffective), *trans. denied.* As a result, we find that Silvers' malpractice action against Brodeur is barred by the discovery rule.

---

3. We note that all of these circumstances employ a peculiar presumption: that a previously-convicted defendant whose conviction has been overturned is guilty until proven innocent. Specifically, a defendant whose conviction is overturned may not file a malpractice action until he or she is retried and affirmatively proves his or her innocence.

4. It may be advisable for a trial court, in legal malpractice proceedings, to hold the malpractice claim in abeyance until the conclusion of any criminal proceedings which bear either on the

Summary judgment affirmed.[5]

ROBERTSON and RILEY, JJ., concur.

criminal defendant's conviction or the effectiveness of his attorney.

**5.** Our research and resolution of this cause was greatly aided by the well-researched and thorough findings entered by Special Judge R. Joseph Howell at the trial court. Similarly, we commend both parties for their excellent briefs submitted to this court.