**Charles A. TROBAUGH, Appellant,**

v.

**Patrick A. SONDAG, In His Capacity as Former State Employee Assistant Public Defender, Appellee.**

No. 02–0549.

Supreme Court of Iowa.

Sept. 4, 2003.

Martha M. McMinn, Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Craig Kelinson, Assistant Attorney General, for appellee.

CADY, Justice.

In this appeal, we consider when a plaintiff's claim accrues for purposes of the statute of limitations of the Iowa Tort Claims Act in a suit for legal malpractice arising from alleged negligence in the representation of the plaintiff while he was a criminal defendant. Underlying this issue is the determination of whether a plaintiff's malpractice claim accrues only after he has achieved relief from the conviction allegedly resulting from the negligent representation. Ultimately, we conclude that the appellant's claim accrued at the time he successfully achieved postconviction relief. For this reason, his claim was filed in a timely manner, contrary to the determination of the district court. Because we also reject the appellee's argument that the appellant's claim is the functional equivalent of claims barred by the Tort Claims Act, we reverse the decision of the district court and remand this case for further proceedings.

## I. Background Facts and Proceedings.

In January 1989, Charles A. Trobaugh (Trobaugh) was charged in Pottawattamie County with assault with intent to inflict serious injury, assault with a dangerous weapon, and possession of a firearm by a felon. Assistant County Attorney Patrick A. Sondag (Sondag) signed the initial complaints filed against Trobaugh. Subsequent to signing the complaints, Sondag took a position as an Assistant Public Defender in the same county. He then became Trobaugh's defense attorney in the same case in which he had signed the initial complaints. Whether Sondag informed Trobaugh of his prior employment

as a county attorney and his role in initiating Trobaugh's prosecution remains at the core of this controversy. Nevertheless, Trobaugh eventually accepted a plea agreement and pled guilty to the charges of displaying a dangerous weapon and possession of a firearm by a felon. He was then incarcerated for eleven months.

Six years later, Trobaugh again faced criminal charges, this time for a federal drug offense for which he was later convicted. Apparently because his 1989 conviction resulted in an enhancement of his federal sentence, Trobaugh began to reexamine the circumstances of his prior state court conviction. In June 1997, his new attorney discovered that Sondag had both signed the initial complaint against Trobaugh in 1989 and represented him in his defense against the same charges.

Trobaugh immediately raised Sondag's potential conflict of interest as a ground for relief in a pending postconviction action. This action was dismissed as time barred. A second postconviction relief action followed but was later withdrawn. He then filed a federal court action against Sondag and others alleging, among other things, conspiracy to bring about his 1989 conviction. This claim was dismissed on a motion for summary judgment. Finally, in June 2000, Trobaugh filed a third application for postconviction relief. This application was successful and he was granted a new trial in November 2000. On remand, he pled guilty to the charge of possession of a firearm by a felon while his other two related Pottawattamie County charges were dismissed.

In late November 2000, Trobaugh filed a claim for monetary damages with the State Appeal Board pursuant to the Iowa Tort Claims Act, alleging the representation by Sondag, a state employee, was tainted by legal malpractice. Shortly after the board denied his claim in April 2001, Trobaugh

filed a civil claim in the district court. Sondag moved to dismiss the claim on a number of grounds, two of which he renews on appeal: (1) Trobaugh's tort claim is barred by the two-year statute of limitations of Iowa Code section 669.13 (2001); and (2) his claim is the functional equivalent of claims barred by the Tort Claims Act. The district court granted Sondag's motion to dismiss, concluding Trobaugh's claims were untimely because they had accrued in June 1997 when he first discovered the potential conflict of interest. Trobaugh appeals from the court's grant of Sondag's motion.

## II. Standards of Review.

■■■ "A motion to dismiss is properly granted only if a plaintiff's petition 'on its face shows no right of recovery under any state of facts.'" *Ritz v. Wapello County Bd. of Supervisors*, 595 N.W.2d 786, 789 (Iowa 1999) (citation omitted). Our review of the district court's ruling on Sondag's motion is limited to the correction of errors at law. *Id.* We are bound by the district court's findings of fact "unless not supported by substantial evidence." *McCormick v. Meyer*, 582 N.W.2d 141, 144 (Iowa 1998). However, "[w]e are not bound by the district court's application of legal principles or its conclusions of law." *Id.* Ultimately, "our decision to overrule or sustain a motion to dismiss must rest on legal grounds." *Haupt v. Miller*, 514 N.W.2d 905, 907 (Iowa 1994).

■■■ This case arises, of course, under the Iowa Tort Claims Act. *See* Iowa Code §§ 669.1–.24. Pursuant to the act, private citizens may sue the State for the actions of a state employee "'but only in the manner and to the extent to which consent has been given by the legislature.'" *Drahaus v. State*, 584 N.W.2d 270, 272 (Iowa 1998) (quoting *Swanger v. State*, 445 N.W.2d 344, 346 (Iowa 1989)). Accordingly, we have acknowledged, "a private citizen's right of suit under the Tort Claims Act is not absolute, but rather is limited by the conditions set forth by the legislature in chapter 669." *Id.* This reality warrants respect for the statutory parameters marked-out by the legislature in creating the act. Nevertheless, in areas in which the act is silent or unclear, we are called upon to interpret its provisions. *See Callahan v. State*, 464 N.W.2d 268, 270 (Iowa 1990). We approach this task carefully, with the delimited parameters and remedial purpose of the statute in mind. *See Sanford v. Manternach*, 601 N.W.2d 360, 370 (Iowa 1999); *Callahan*, 464 N.W.2d at 272.

## III. Relief After Conviction and the Discovery Rule.

■■■ The resolution of this appeal requires us to focus on the point in time at which Trobaugh's claim of legal malpractice was or should have been "discovered."[1] This approach is warranted because "a negligence claim against the State for personal injuries caused by a State employee" calls for the application of the statute of limitations provision of Iowa Code section 669.13. *Vachon v. State*, 514

---

1. In a typical legal malpractice cause of action, the establishment of a prima facie claim requires the production of

substantial evidence that shows: (1) the existence of an attorney-client relationship giving rise to a duty, (2) the attorney, either by an act or failure to act, violated or breached that duty, (3) the attorney's breach of duty proximately caused injury to the client, and (4) the client sustained actual injury, loss, or damage.

*Ruden v. Jenk*, 543 N.W.2d 605, 610 (Iowa 1996). If the plaintiff fails to prove any of these elements, he cannot recover. *Id.* Ultimately, the posture of this appeal minimizes the importance of these elements in resolving Trobaugh's claim.

N.W.2d 442, 444 (Iowa 1994). Importantly, we have previously interpreted section 669.13 as encompassing the "discovery rule," under which "a cause of action based on negligence does not accrue until a plaintiff discovers the injury or by the exercise of reasonable diligence should have discovered it." *Id.* at 445; *see also Millwright v. Romer*, 322 N.W.2d 30, 33 (Iowa 1982) ("The [discovery] rule applies in legal malpractice cases.").

Trobaugh argues that his claim accrued under the discovery rule on November 9, 2000, the date on which the court in his third postconviction relief action concluded that he was entitled to a new trial. Therefore, because his initial State Appeal Board claim was filed in late November 2000 and his petition in the district court was filed within six months of the board's disposition, his claim was made well within the statute of limitations for tort claims against a state employee. *See* Iowa Code §§ 669.5, .13. He supports this conclusion by way of analogy to conviction-related cases arising under 28 U.S.C. § 1983 and cases alleging malicious prosecution. In both types of cases, courts have determined that viable causes of action cannot be maintained in the absence of relief from the underlying conviction and thus a claim does not accrue until such relief is granted. *See Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383, 394 (1994); *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 400 (Iowa 1998).

Sondag counters these arguments by asserting that Trobaugh discovered the alleged malpractice in June 1997 when his new attorney uncovered Sondag's connection to both facets of the 1989 criminal case.[2] Thus, he argues, the cause of action had accrued and the statute of limitations began to run at that point, making Trobaugh's later malpractice claim untimely. Sondag also refutes the applicability of cases arising in the section 1983 and malicious prosecution contexts, noting that those cases did not involve the interpretation of the Iowa Tort Claims Act as this case does.

We agree with Sondag that Trobaugh's analogy to section 1983 and malicious prosecution cases is largely ineffective in light of the specific context in which this case arises. Both segments of claims may involve issues that overlap with a legal malpractice action under the Tort Claims Act, but the variance between the different statutory and common law claims in each of the three categories justify caution against resolving this issue by relying on section 1983 and malicious prosecution precedents. Moreover, there is a significant amount of precedent in the legal malpractice area itself that addresses claims similar to those raised by Trobaugh. Thus, we turn to this body of law to guide our resolution of his appeal.

Ultimately, our resolution hinges on whether a claim for legal malpractice in the criminal case context can be discovered prior to the plaintiff receiving relief from the conviction that allegedly resulted from negligent representation.[3] This issue has

---

2. Sondag also intimates that Trobaugh had sufficient knowledge to have "discovered" his legal malpractice claim in 1989, sometime during the course of Sondag's representation. Although there may be support for an approach marking the accrual of a claim at the point in time at which the alleged negligent representation occurs or ceases, Sondag does little to advance this argument. *See Gebhardt*

*v. O'Rourke*, 444 Mich. 535, 510 N.W.2d 900, 904–05 (1994); *Bailey v. Tucker*, 533 Pa. 237, 621 A.2d 108, 115–16 (1993). Moreover, we believe this case is properly resolved by looking at the events of June 1997 and after and focus on this period, as the parties do primarily.

3. Although Trobaugh's specific claim has arisen in the context of a postconviction relief

arisen in similar forms in a number of cases in other jurisdictions. Not surprisingly, the courts facing this issue have produced a divergence of opinion on the proper approach to take.

Many courts have concluded that some form of relief from a conviction is necessary before a criminal defendant can successfully bring a civil lawsuit for legal malpractice against a former attorney. *See Canaan v. Bartee,* 72 P.3d 911, 915–16 (Kan.2003) (collecting cases); *Berringer v. Steele,* 133 Md.App. 442, 758 A.2d 574, 591–92 (2000) (same); *Gibson v. Trant,* 58 S.W.3d 103, 108–09 (Tenn.2001) (same). In fact, some of these courts go so far as to require a criminal defendant to prove his innocence in the course of his civil case before being allowed to recover. *See Canaan,* 72 P.3d at 916 (collecting cases); *Berringer,* 758 A.2d at 592 (same); *Gibson,* 58 S.W.3d at 109 (same). Under this required-relief approach, a civil claim for legal malpractice is typically considered discovered and begins to accrue at the time relief from a conviction is granted. *See Shaw v. State, Dep't of Admin., Pub. Defender Agency,* 816 P.2d 1358, 1362 (Alaska 1991); *Steele v. Kehoe,* 747 So.2d 931, 933 (Fla.1999); *Stevens v. Bispham,* 316 Or. 221, 851 P.2d 556, 566 (1993); *Adkins v. Dixon,* 253 Va. 275, 482 S.E.2d 797, 801 (1997). *But see Coscia v. McKenna & Cuneo,* 25 Cal.4th 1194, 108 Cal. Rptr.2d 471, 25 P.3d 670, 679–80 (2001) (concluding that relief from a conviction must be achieved before a successful legal malpractice claim, but the malpractice claim accrues even in the absence of such relief). A court taking this approach to the issue generally grounds its conclusions on one of a number of policy-based considerations, including:

> equitable principles against shifting responsibility for the consequences of the criminal's action; the paradoxical difficulties of awarding damages to a guilty person; theoretical and practical difficulties of proving causation; the potential undermining of the postconviction process if a legal malpractice action overrules the judgments entered in the postconviction proceedings; preserving judicial economy by avoiding relitigation of settled matters; creation of a bright line rule determining when the statute of limitations runs on the malpractice action; availability of alternative postconviction remedies; and the chilling effect on thorough defense lawyering.

*Canaan,* 72 P.3d at 916.

Of course, a number of courts have concluded that a defendant need not achieve relief from a conviction before bringing a claim for legal malpractice. *See id.* at 918 (collecting cases); *Gibson,* 58 S.W.3d at 109 (same). The upshot of this no-relief-required approach is that a claim for legal malpractice is found to accrue before relief from a conviction is achieved, often upon the discovery of the facts related to the attorney's negligent conduct. *See Gebhardt v. O'Rourke,* 444 Mich. 535, 510 N.W.2d 900, 907 (1994); *Jepson v. Stubbs,* 555 S.W.2d 307, 312 (Mo.1977); *Seevers v. Potter,* 248 Neb. 621, 537 N.W.2d 505, 511 (1995); *Duncan v. Campbell,* 123 N.M. 181, 936 P.2d 863, 868 (Ct.App.1997). Some proponents of this approach assert that requiring relief from a conviction forces a court to entertain an untenable legal fiction:

---

action, it is conceivable that similar claims could arise in other contexts in which it is possible to achieve relief from a conviction. *See Berringer v. Steele,* 133 Md.App. 442, 758 A.2d 574, 590 n. 9 (2000) (noting the "various

legal proceedings that occur subsequent to trial, including appeals [and] habeas corpus"); *Coscia v. McKenna & Cuneo,* 25 Cal.4th 1194, 108 Cal.Rptr.2d 471, 25 P.3d 670, 676 (2001).

"[P]ersons convicted of a crime will be astonished to learn that, even if their lawyers' negligence resulted in their being wrongly convicted and imprisoned, they were not harmed when they were wrongly convicted and imprisoned but, rather, that they are harmed only if and when they are exonerated."

*Gebhardt,* 510 N.W.2d at 906 n. 13 (citation omitted); *see also Duncan,* 936 P.2d at 867–68. Other courts have concluded that the no-relief-required approach is simply the most effective choice because it permits respect for the policies behind statutes of limitations while also preserving the role of remedies allowing relief from a conviction, particularly as a consideration for a legal malpractice claim. *See Fantazia v. County of Stanislaus,* 41 Cal. App.4th 1444, 49 Cal.Rptr.2d 177, 182–84 (1996); *Silvers v. Brodeur,* 682 N.E.2d 811, 817–18 (Ind.Ct.App.1997); *Gebhardt,* 510 N.W.2d at 906–07; *Duncan,* 936 P.2d at 868; *Krahn v. Kinney,* 43 Ohio St.3d 103, 538 N.E.2d 1058, 1062 (1989).

■ Upon considering all of the issues presented and the wealth of commentary on this issue by other courts, we conclude that the approach that requires a defendant to achieve relief from a conviction before advancing a legal malpractice action against his former attorney is superior in this particular area of the law.[4] In reaching this conclusion, we are persuaded by the extensive, well-reasoned policy arguments underlying the relief-required approach. *See Canaan,* 72 P.3d at 916. Most importantly, we believe this approach best preserves key principles of judicial economy and comity, including the avoidance of multiple proceedings related to the same factual and procedural issues, respect for other statutorily created processes such as postconviction relief, and the prevention of potentially wasteful practices such as requiring a plaintiff to file a legal malpractice claim which may never come to fruition due to one of a number of factors.[5] *See id.*

We thus also conclude that a claim for legal malpractice in the criminal case context is not discovered and does not accrue until relief from a conviction is achieved. Admittedly, this conclusion may pose difficulties for parties in that claims may rest

4. Both the procedural posture of this appeal and the absence of arguments by the parties on the issue lead us to avoid the question of what role, if any, the plaintiff's guilt or innocence plays in advancing a claim for legal malpractice.

5. Some courts—under both approaches—have imposed a "two track" procedure for legal malpractice claims arising in the criminal context. *See Coscia,* 108 Cal.Rptr.2d 471, 25 P.3d at 680; *Silvers v. Brodeur,* 682 N.E.2d 811, 818–19 n. 4 (Ind.Ct.App.1997); *Berringer,* 758 A.2d at 604; *Gebhardt,* 510 N.W.2d at 907; *Seevers v. Potter,* 248 Neb. 621, 537 N.W.2d 505, 511 (1995); *Duncan v. Campbell,* 123 N.M. 181, 936 P.2d 863, 868–69 (1997). These courts require a plaintiff to file both an action for relief from a conviction and a civil lawsuit in a timely fashion and then, if necessary, seek the equitable powers of the court to stay the civil action while the relief action proceeds. *See Coscia,* 108 Cal.Rptr.2d 471,

25 P.3d at 680; *Silvers,* 682 N.E.2d at 818–19 n. 4; *Berringer,* 758 A.2d at 604; *Gebhardt,* 510 N.W.2d at 907; *Seevers,* 537 N.W.2d at 511; *Duncan,* 936 P.2d at 868–69. Other courts have observed that the achievement of relief from a conviction should simply be a factor in the analysis of causation and damages when establishing a legal malpractice claim. *See Brewer v. Hagemann,* 771 A.2d 1030, 1033–34 (Me.2001); *Krahn v. Kinney,* 43 Ohio St.3d 103, 538 N.E.2d 1058, 1062 (1989); *Gibson v. Trant,* 58 S.W.3d 103, 111–12 (Tenn.2001); *see also Schlumm v. Terrence J. O'Hagan, P.C.,* 173 Mich.App. 345, 433 N.W.2d 839, 847 (1988). Although these approaches present certain advantages, we believe both are inefficient methods for allowing the pursuit of a malpractice claim, especially in light of the conclusiveness of our chosen method requiring relief from a conviction before the advancement of the civil claim.

uncontested for numerous years before accruing in the aftermath of successful relief from a conviction. *See Harrington v. Toshiba Mach. Co.*, 562 N.W.2d 190, 192 (Iowa 1997) (citation omitted) (describing the policy considerations underlying statutes of limitations); *see also Schulte v. Wageman*, 465 N.W.2d 285, 286–87 (Iowa 1991) (same). Nevertheless, the very nature of many actions for relief from a conviction requires the consideration of late-discovered grounds for such relief. Despite the potential age of such claims, actions for relief are a functioning part of the criminal system, and we believe related actions may similarly operate in the civil context. In addition, the previously mentioned principles of economy and comity, as well as the advantage of having a clear demarcation of the point in time when the claim accrues, outweigh the potential hazards of arguably stale claims.

Ultimately, the application of our conclusions on these issues to Trobaugh's claim leads us to conclude that his claim accrued upon the district court's granting of his third postconviction relief petition on November 9, 2000.[6] For this reason, both his State Appeal Board and civil filings were timely, contrary to the conclusion of the district court. Our determination that his claim was timely makes it necessary to consider Sondag's alternative defense that Trobaugh's claim is the functional equivalent of claims barred by the Tort Claims Act. We turn now to our consideration of this argument.

## IV. Functional Equivalency.

■ As noted previously, a citizen's right to sue a state employee under the Iowa Tort Claims Act "is limited by conditions set forth by the legislature in chapter 669." *Drahaus*, 584 N.W.2d at 272. These limitations are most clearly manifested in the specific exceptions to the act, which describe the categories of claims for which the State has not waived its sovereign immunity. *See* Iowa Code § 669.14. Of particular importance here is the exception for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Id.* § 669.14(4). In *Greene v. Friend of Court, Polk County*, we recognized that this section "identifies excluded claims in terms of the type of wrong inflicted." 406 N.W.2d 433, 436 (Iowa 1987); *see also Hawkeye By–Prods., Inc. v. State*, 419 N.W.2d 410, 411 (Iowa 1988). Thus, where "[t]he gravamen of plaintiff's claim … is the functional equivalent" of the causes of action listed in Iowa Code section 669.14(4), the claim cannot be pursued successfully against the State. *Greene*, 406 N.W.2d at 436; *see also Hawkeye By–Prods., Inc.*, 419 N.W.2d at 411–12.

■ In his arguments before the district court, Sondag claimed that Trobaugh's claim for legal malpractice was the functional equivalent of claims for false imprisonment, abuse of process, and malicious prosecution, each of which are barred by Iowa Code section 669.14(4). Because the district court accepted his argument related to the timeliness of Trobaugh's claim, it did not address this alternative defense. Nevertheless, Sondag is entitled to have this claim considered on appeal. *See Interstate Power Co. v. Ins. Co. of N.*

---

6. In this case, the State did not appeal the district court's determination that Trobaugh was entitled to postconviction relief. Thus, he was able to advance his civil claim assured that he had, in fact, achieved relief from his conviction. We do not decide today what effect an appeal from a court's grant of relief would have on the accrual of a malpractice claim. *See Silvers*, 682 N.E.2d at 818.

*Am.*, 603 N.W.2d 751, 756 (Iowa 1999). However, we conclude that his claim is unavailing.

Trobaugh's claim for legal malpractice is premised on Sondag's alleged failure to render effective assistance of counsel as exhibited by his neglecting to inform Trobaugh of his prior employment as a county attorney and somehow inducing him to plead guilty to two of his 1989 charges. Although it is conceivable that certain facets of Trobaugh's malpractice claim would be relevant to claims for false imprisonment, abuse of process, or malicious prosecution, his claim is focused upon the information actually provided by Sondag and the nature of their attorney-client relationship. A mere conceivable similarity between issues arising in the claim for legal malpractice and issues which may arise in a claim for false imprisonment, abuse of process, or malicious prosecution is insufficient to establish the nexus of functional equivalency. We believe the acceptance of Sondag's argument that the gravamen of Trobaugh's claim is the functional equivalent of the three enumerated torts would misinterpret the malpractice claim and stretch the functional equivalency principle too far. Thus, we reject Sondag's claim that Trobaugh's legal malpractice action is barred under an exception to the Tort Claims Act as the functional equivalent of causes of action for false imprisonment, abuse of process, or malicious prosecution.

## V. Conclusion.

We reverse the district court's grant of Sondag's motion to dismiss and remand this case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**