# IN THE COURT OF APPEALS OF IOWA

No. 19-1720
Filed August 19, 2020

**SHAWN ALLEN JAMES,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.


　　Shawn Allen James appeals the dismissal of his claim for damages via summary judgment in favor of the State on the basis of statutory immunity. **AFFIRMED**.


　　Gordon E. Allen, Johnston, for appellant.

　　Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for appellee State.


　　Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**AHLERS, Judge.**

Shawn Allen James is a former Iowa prison inmate. He was convicted of attempted murder in 2000 and sentenced to serve a twenty-five-year prison term with a mandatory minimum sentence of seventy percent, or seventeen and one-half years.[1] James was a juvenile at the time he committed the crime.

While James was serving his prison sentence, our supreme court decided *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014). *Lyle* struck down mandatory minimum sentences of imprisonment for juvenile offenders under the Iowa Constitution. *Id.* at 400. As a result, James was required to be resentenced. *Id.* at 403. He was resentenced in March 2015, at which time the mandatory minimum sentence was removed. That is where the disagreement that spawned this litigation began.

James claimed that, with the removal of the mandatory minimum sentence at the time of his resentencing, he was entitled to a reduction of his sentence at the rate of 1.2 days for each day served while demonstrating good conduct. *See* Iowa Code § 903A.2(1)(a) (2015). With such accelerated credit, James argued he was eligible for parole or work release immediately upon being resentenced.

The Iowa Department of Corrections (DOC), on the other hand, asserted that, while the mandatory minimum sentence had been removed upon

---

[1] In their briefs, the parties agree James's sentence carried a seventy-percent minimum sentence before parole or work release eligibility pursuant to Iowa Code sections 902.12 and 903A.2 (1999). A review of the code in effect at the time of James's initial incarceration suggests he was required to serve a minimum of eighty-five percent of the sentence before parole or work release eligibility. *See* Iowa Code §§ 902.12, 903A.2. We need not decide whether the sentence carried a seventy-percent or eighty-five-percent mandatory minimum, as it does not affect the outcome in this case. Therefore, we will use the parties' agreed figure of seventy percent in our discussion.

resentencing, James was still only entitled to accrue earned time credit at the rate of fifteen eighty-fifths of a day for each day served while demonstrating good conduct. *See id.* § 903A.2(1)(b). Under the DOC's interpretation, the removal of the mandatory minimum did not change James's tentative discharge date or his eligibility for parole or work release.

Disagreeing with the DOC's interpretation, James promptly filed a postconviction relief (PCR) application challenging the calculation of his earned time credit. Ruling on cross-motions for summary judgment, the district court rejected James's argument and dismissed his application for PCR on October 19, 2015. James appealed.

While his case was on appeal, James was released to work release on August 2, 2016, and was paroled on October 11, 2016. One month later, on November 18, 2016, our supreme court reversed the district court, finding James was entitled to earned-time credit at the rate of 1.2 days for each day of good conduct. *James v. State*, No. 15-1827, 2016 WL 6825397, at *3 (Iowa Nov. 18, 2016).[2] James was discharged from parole on December 9, 2016. Procedendo issued on his successful appeal on December 19, 2016.

James filed suit in this matter seeking damages from the State for being "illegally, wrongfully and unconstitutionally imprisoned" and for having "his liberty restrained" from the date of his resentencing (March 13, 2015) to the date of his discharge from parole (December 9, 2016). The State filed an answer denying

---

[2] The supreme court's decision was an unpublished per curiam opinion based on the court's holding on the same day in the companion case *Breeden v. Iowa Department of Corrections*, 887 N.W.2d 602, 612 (Iowa 2016).

liability and asserting a number of defenses. One of the defenses the State asserted was sovereign immunity pursuant to Iowa Code section 669.14(4) (2019).[3] The State sought summary judgment on several grounds, and the district court granted summary judgment on the basis of sovereign immunity and dismissed James's cause of action. James appeals.

"A ruling on summary judgment is reviewed for corrections at law. Summary judgment is appropriate when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden of proof." *Munger, Reinschmidt & Denne, L.L.P. v. Lienhard Plante*, 940 N.W.2d 361, 365 (Iowa 2020) (citations omitted).

It appears undisputed that there are no genuine issues of material fact. Further, there is no dispute James followed the proper procedures for making a claim against the State pursuant to Iowa Code chapter 669, the Iowa Tort Claims Act (ITCA). The disagreement in this case is whether the undisputed facts trigger the immunity granted by Iowa Code section 669.14(4). While the parties disagree about a variety of issues surrounding James's claim, we do not need to untangle all of those disputes. Our task is to determine whether the State was entitled to immunity under section 669.14(4), as that is the basis for the district court granting summary judgment to the State and dismissing James's lawsuit.

---

[3] The State's answer technically referenced sovereign immunity pursuant to Iowa Code section 669.15(5). This appears to be a "one key off" typographical error intended to reference section 669.14(4), as there is no section 669.15(5) and subsequent filings make it clear the State was relying on section 669.14(4). Appropriately, no issue has been raised regarding this apparent typographical error.

To fulfill our task, we start with a discussion about claims against the State under the ITCA. A citizen's right to sue under the ITCA is limited by conditions set forth by the legislature in Iowa Code chapter 669. *Trobaugh v. Sondag*, 668 N.W.2d 577, 584 (Iowa 2003). "These limitations are most clearly manifested in the specific exceptions to the act, which describe the categories of claims for which the State has not waived its sovereign immunity." *Id.* One such exception is that found in Iowa Code section 669.14(4), which states:

> The provisions of this chapter shall not apply with respect to any claim against the state, to:
> . . .
> 4. Any claim arising out of assault, battery, *false imprisonment*, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

(Emphasis added.)

James asserts officials of the State negligently failed to calculate his earned-time credit correctly in spite of ample precedent to guide them and multiple requests by James to do so. James candidly acknowledges that, if his claim is one for false imprisonment, his claim is barred by section 669.14(4). James also candidly acknowledges his damages are calculated by consideration of his extra time in prison. Nevertheless, he asserts his claim is based on negligence, not false imprisonment, so section 669.14(4) does not apply. The State counters by asserting that James's claim, no matter how it is couched, is a claim for false imprisonment and thus barred by the immunity retained by the State via the statute.

To resolve the dispute, we turn to our case law interpreting the statute. In 2014, our supreme court summarized the interpretation of section 669.14 as follows:

In our previous cases, including *Minor* [*v. State*], we have made clear that if a claim is the functional equivalent of a section 669.14 exception to the ITCA, the State has not waived its sovereign immunity. *See* [819 N.W.2d 383, 406–08 (Iowa 2012); *Trobaugh*, 668 N.W.2d at 584]; *Hawkeye By-Prods., Inc. v. State*, 419 N.W.2d 410, 411 (Iowa 1988); *Greene v. Friend of Ct.*, 406 N.W.2d 433, 436 (Iowa 1987). Our focus is not on the terminology used to describe the claim but instead on the "type of wrong inflicted." *Trobaugh*, 668 N.W.2d at 584 (internal quotation marks omitted). However, "[a] mere conceivable similarity between issues arising in the claim . . . and issues which may arise in a claim [exempted from the ITCA] is insufficient to establish the nexus of functional equivalency." *Id.* at 585 (declining to find a claim for legal malpractice was the functional equivalent of false imprisonment, abuse of process, or malicious prosecution and therefore barred by the ITCA); *see also Minor*, 819 N.W.2d at 406.

*Smith v. Iowa State Univ. of Sci. and Tech.*, 851 N.W.2d 1, 20–21 (Iowa 2014). Based on this authority, if James's claim is the functional equivalent of a false imprisonment claim, it is barred by the statute. If it is not, his claim is not barred.

Although James argues valiantly that his claim is not the functional equivalent of a false imprisonment claim, the argument falls flat. No matter how James may try to spin it, his claim is one of false imprisonment, or, at the very least, "aris[es] out of false imprisonment." *See* Iowa Code § 669.14(4) (referencing claims "arising out of . . . false imprisonment"). The entire basis for his claim is that he was wrongfully imprisoned longer than he should have been by agents of the State. The fact James asserts his claim as one of negligence by the State's agents does not change the fact the claim is still the functional equivalent of false imprisonment. As our supreme court noted in response to a similar attempt to avoid the effect of the statute based on the theory of recovery, "[t]here would be little purpose in such a statutory scheme if it could be circumvented merely by a shift of legal theory." *Hawkeye*, 419 N.W.2d at 412. We find James's claim to be

the functional equivalent of a claim for false imprisonment, so it is barred by the immunity provisions of section 669.14(4).

Before concluding, we find it appropriate to address James's reliance on *Trobaugh*, 668 N.W.2d at 579–85. We find that case distinguishable and, therefore, unpersuasive.

In *Trobaugh*, Trobaugh faced criminal charges and Sondag, an attorney employed by the State public defender's office, was appointed to represent him. *Id.* at 579. Sondag was a former assistant county attorney who signed the initial complaints against Trobaugh. *Id.* Trobaugh eventually pled guilty with the assistance of Sondag and was incarcerated for eleven months. *Id.* Trobaugh later discovered information about Sondag's role in signing the original complaints against him, information Trobaugh asserted he did not have before entering his guilty plea and being incarcerated. *Id.* Trobaugh eventually obtained postconviction relief on the basis of the conflict of interest and then brought suit against Sondag, claiming legal malpractice. *Id.* at 579–80. Because Sondag was an employee of the State at the time he was alleged to have committed malpractice, Sondag asserted the defense of immunity pursuant to section 669.14(4), claiming Trobaugh's claims were the functional equivalent of claims for false imprisonment, abuse of process, and malicious prosecution, and thus barred by the statute. *Id.* at 584. The supreme court rejected Trobaugh's claims, stating that "accept[ing] Sondag's argument that the gravamen of Trobaugh's claim is the functional equivalent of the three enumerated torts would misinterpret the malpractice claim and stretch the functional equivalency principle too far." *Id.* at 585.

We find *Trobaugh* distinguishable, factually and conceptually. In *Trobaugh*, the claim by the formerly incarcerated party was against his former attorney for legal malpractice. While the alleged malpractice may have ultimately resulted in Trobaugh being incarcerated, his attorney was not the party alleged to be falsely imprisoning him. Therefore, the attorney was not entitled to immunity under the statute because there was no claim the attorney had falsely imprisoned Trobaugh. Here, in contrast, James is asserting that the party engaged in tortious conduct (i.e., the State) is the same party that unlawfully imprisoned him. Because of that commonality, which did not exist in *Trobaugh*, James's claim fails to the immunity preserved by section 669.14(4).

Finding James's claim barred by sovereign immunity preserved by Iowa Code section 669.14(4), we find no error in the district court's decision to grant summary judgment to the State and dismiss James's cause of action.

**AFFIRMED.**