# IN THE SUPREME COURT OF IOWA

No. 14–1550

Filed February 5, 2016

Amended May 4, 2016

**ROBERT ALLEN BARKER,**

Appellant,

vs.

**DONALD H. CAPOTOSTO** and **THOMAS M. MAGEE,**

Appellees.

---

Appeal from the Iowa District Court for Palo Alto County, Duane E. Hoffmeyer, Judge.

The plaintiff in a legal malpractice action against his former criminal defense attorneys appeals a district court ruling granting summary judgment to the defendants on the ground the plaintiff could not establish he was actually innocent of a crime. **REVERSED AND REMANDED.**

Ashleigh E. O'Connell Hackel (until withdrawal) and J. Campbell Helton of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

Alexander E. Wonio and David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellee Thomas M. Magee.

Donald H. Capotosto, West Bend, pro se.

**MANSFIELD, Justice.**

This case asks us to determine whether a criminal defendant who sues his or her attorney for legal malpractice must prove actual innocence as a precondition to recovery. In *Trobaugh v. Sondag*, 668 N.W.2d 577, 583 n.4 (Iowa 2003), we reserved judgment on this question.

In the present case, the plaintiff faults his former criminal defense attorneys for allowing him to plead guilty to a specific crime that lacked a factual basis. He sued the attorneys for malpractice, but the district court granted them summary judgment because the plaintiff could not show he was actually innocent of any offense that formed the basis for the underlying criminal case.

On our review, we decline to adopt proof of actual innocence as a separate prerequisite to recovery for legal malpractice against criminal defense attorneys. Instead, we believe judges and juries should take innocence or guilt into account in determining whether the traditional elements of a legal malpractice claim have been established. We therefore reverse and remand for further proceedings.

**I. Background Facts and Proceedings.**

In 2006, Robert Barker placed crudely worded graffiti on the wall of a public restroom in a park in Emmetsburg inviting young males interested in oral sex to contact a certain email address. In response to public complaints about the graffiti, law enforcement began an investigation. An agent of the Iowa Division of Criminal Investigation posed as a fifteen-year-old male named "Jayson" and established online contact with Barker using the email address.

Eventually, Barker made plans to meet "Jayson" for a sex act. When Barker appeared at the arranged location, he was arrested. The

State charged Barker with attempted enticement of a minor, an aggravated misdemeanor, and lascivious acts with a child, a class "D" felony. *See* Iowa Code § 710.10(3) (2005); *id.* § 709.8(3). Later, the court granted the State's request to amend the second count to solicitation of a minor to commit a sex act, a purported class "D" felony. *See id.* § 702.17; *id.* § 705.1; *id.* § 709.4(2)(*c*)(4).[1]

On October 3, Barker entered into a written plea agreement. Under the plea agreement, Barker was to plead guilty to the amended charge of solicitation of a minor. The first count—attempted enticement—would be dismissed and the State would recommend a suspended sentence and probation with the condition that Barker complete sex-offender treatment through a residential treatment facility (RTF) in Sioux City.

During this stage of the proceedings, Barker was represented by Thomas Magee, whom Barker consulted concerning his decision to plead guilty. Thereafter, Magee closed his law office and the court allowed him to withdraw from further representation. The district court subsequently appointed Donald Capotosto to represent Barker.

On December 11, Barker's plea and sentencing hearing took place in the Palo Alto County District Court. The terms of the plea agreement were put on the record. Barker gave the following statement regarding the offense:

---

[1]The amended count sought to charge an inchoate crime (Iowa has no general attempt statute) by combining Iowa Code section 705.1's general prohibition on soliciting other persons to commit crimes with section 709.4(2)(*c*)(4)'s prohibition on performing a sex act with a person who is fourteen or fifteen years of age when the person committing the act is four or more years older. The problem with this effort, as became apparent years later, is that Barker wasn't soliciting *someone else* to commit the crime of sexual abuse; he was attempting to commit that crime himself.

On August 16th I was in communication on line with what I presumed to be a 15-year-old male. That 15-year-old male had contacted me the day before after, ostensibly after coming across an e-mail address that I had written in a restroom . . . . The conversation was such that we came to an understanding that we would meet and possibly sexual activity could happen. That was the nature of the conversation. Obviously it was not a minor. It was a sting operation, and I was arrested.

The district court sentenced Barker to five-years imprisonment, suspended the sentence, and placed Barker on probation for the duration of his sentence. Additionally, in Clay County, Barker had pled guilty to second-degree theft, a class "D" felony, *see* Iowa Code § 714.2(2), with the understanding that the sentence on that charge would run concurrently with the sentence on the solicitation of a minor charge.

Barker's sentencing order for the solicitation offense prohibited him from engaging in unsupervised contact with minors and provided that all internet access, including chat room use, needed to be preapproved by his probation officer. The order permitted Barker to complete outpatient sex-offender treatment through Catholic Charities instead of mandating commitment to the RTF but required him to seek an evaluation from Catholic Charities within sixty days. The order further provided that Barker had to register as a sex offender.

On December 29, 2006, the State filed an application for probation revocation based on Barker's use of a public library computer. Barker was arrested and jailed. However, on January 23, 2007, the district court denied the application and ordered Barker released, reasoning that there was no specific prohibition on his use of a computer, so long as it did not involve use of the internet or chat rooms.

On February 5, 2007, Barker received a five-year suspended sentence on the Clay County theft charge, to run concurrently with his

sentence for solicitation of a minor. Barker was placed on probation for that charge as well.

On occasions in April, May, July, and September, Barker was noncompliant with the treatment services at Catholic Charities. He was discharged from that program. After a home visit revealed that Barker was engaged in internet use and had images of young males on his computer, his computer was seized and in December the district court ordered Barker into the RTF once space became available.

In March 2008, Barker was admitted to the RTF. Barker lost several jobs during this time period because of unauthorized internet use, including the access of pornography. On July 31, Barker was unsuccessfully terminated from the RTF, and the State filed another application for revocation of his probation. Barker was jailed again at this time.

On October 30, the district court revoked Barker's probation on the solicitation of a minor charge and sentenced him to imprisonment for a term not to exceed five years with credit for time served. Barker was transferred to the Mount Pleasant Correctional Facility.

On November 14, 2008, a probation revocation proceeding was commenced in Clay County on Barker's theft conviction. This proceeding was dismissed on March 2, 2009, due to the fact that Barker was already in prison based on the conviction for solicitation of a minor.

On October 1, Barker filed an application for postconviction relief from his conviction for solicitation of a minor. His application alleged that his prior counsel had committed ineffective assistance of counsel because there was no factual basis for his guilty plea to solicitation of a minor to engage in a sex act. In a written ruling, the district court granted the application on February 28, 2011. The court reasoned that

to commit the offense, Barker had to have solicited someone else to commit an actual crime, and he had not done so. The court explained, "If such [sex] act occurred, the adult would be committing the crime and the child would be a victim. Thus, the adult cannot be considered to have asked the fourteen or fifteen year old to commit a felony crime." The court then concluded,

> By advising and permitting Barker to plead guilty to a crime for which he could not give a factual basis, defendant's counsel failed to perform an essential duty and the prejudice to defendant was inherent in the conviction entered upon his defective plea.

The court vacated Barker's conviction and sentence.

Barker never appealed or sought postconviction relief from his second-degree theft conviction in Clay County. Also, Barker does not dispute that his conduct in Palo Alto County amounted to attempted enticement of a child in violation of Iowa Code section 710.10(3), the first count charged in the original trial information.

On March 1, 2013, Barker filed a petition alleging that Magee and Capotosto committed legal malpractice by advising him to plead guilty to an offense for which there was no factual basis. Thereafter, Capotosto filed a motion for summary judgment, which Magee joined. They argued Barker could not establish that he was factually innocent in the underlying criminal case. They urged that the Iowa courts should require a plaintiff to prove actual innocence in order to maintain a suit for legal malpractice occurring in the course of criminal representation. They also argued that, as a matter of law, their alleged malpractice did not cause Barker's damages.

The district court granted the motion on the first ground, stating,

> [T]he Court finds actual innocence must be established in a criminal malpractice action. Additionally, the Court finds

actual innocence requires innocence of all transactionally related offenses. Plaintiff does not dispute that he attempted to entice a person whom he believed to be under the age of 16 with the intent to commit an illegal act. Plaintiff admits that what he did do was engage in a telephone conversation with a person he believed to be fifteen years old for the purpose of arranging a meeting leading to a sexual encounter and that this meets the definition of attempted enticement of a minor for an illegal act, an aggravated misdemeanor, under Iowa Code Section 710.10(3) (2005), which was charged in the under[ly]ing criminal case FECR04088. Plaintiff is unable to establish actual innocence of all transactionally related offenses. Therefore, the Court finds summary judgment in favor of Defendants is appropriate.

Barker appealed, and we retained the appeal.

## II. Standard of Review.

We review grants of summary judgment for correction of errors at law. *Vossoughi v. Polaschek*, 859 N.W.2d 643, 649 (Iowa 2015). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 235 (Iowa 2015). We view the facts in the light most favorable to the nonmoving party. *Veatch v. City of Waverly*, 858 N.W.2d 1, 6 (Iowa 2015).

## III. Analysis.

A party seeking to establish a prima facie claim of legal malpractice must show the following: (1) a duty arising from the established existence of an attorney–client relationship; (2) the attorney breached that duty; (3) the attorney's breach was the proximate cause of injury to the client; and (4) the client suffered actual damage, injury, or loss. *Ruden v. Jenk*, 543 N.W.2d 605, 610 (Iowa 1996). Additionally, we have held that a criminal defendant must "achieve relief from a conviction before

advancing a legal malpractice action against his former attorney." *Trobaugh*, 668 N.W.2d at 583.

In *Trobaugh*, we noted that some courts had also required proof of actual innocence before allowing recovery but declined to reach the issue. *Id.* at n.4. We explained,

> Both the procedural posture of this appeal and the absence of arguments by the parties on the issue lead us to avoid the question of what role, if any, the plaintiff's guilt or innocence plays in advancing a claim for legal malpractice.

*Id.*

Barker's case squarely presents the issue reserved in *Trobaugh*—whether proof of actual innocence is required in a "criminal malpractice" suit.[2] We are not the first court to confront this question. Other jurisdictions have addressed whether to require actual innocence in a criminal malpractice action. We consider three of the approaches taken elsewhere and their supporting reasoning.

Of those jurisdictions to have considered the issue, a majority have adopted an "actual innocence" requirement. *See Wiley v. County of San Diego*, 966 P.2d 983, 985, 991 (Cal. 1998) (holding that actual innocence is a required element of a plaintiff's cause of action in a criminal malpractice action); *Schreiber v. Rowe*, 814 So. 2d 396, 399 (Fla. 2002) (per curiam) (same); *Glenn v. Aiken*, 569 N.E.2d 783, 786 (Mass. 1991) (same); *Rodriguez v. Nielsen*, 609 N.W.2d 368, 374 (Neb. 2000) (same); *Morgano v. Smith*, 879 P.2d 735, 738 (Nev. 1994) (holding that "in order to prevail at trial, the [criminal malpractice] plaintiff must prove actual

---

[2]The term "criminal malpractice" has been used to describe a legal malpractice action brought by a former criminal defendant against his or her former criminal defense attorney. *See, e.g.*, Otto M. Kaus & Ronald E. Mallen, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice,"* 21 U.C.L.A. L. Rev. 1191, 1191 n.2 (1974) (defining the phrase).

innocence of the underlying charge"); *Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A.*, 727 A.2d 996, 998–99 (N.H. 1999) (holding that only clients able to prove actual innocence can challenge decisions made by defense counsel through malpractice actions); *Carmel v. Lunney*, 511 N.E.2d 1126, 1128 (N.Y. 1987) (holding that a criminal malpractice plaintiff "must allege . . . innocence or a colorable claim of innocence" to state a cause of action); *Bailey v. Tucker*, 621 A.2d 108, 113 (Pa. 1993) ("[D]efendant must prove, by a preponderance of the evidence, that he did not commit any unlawful acts with which he was charged as well as any lesser offenses included therein [to maintain criminal malpractice suit]."); *Ang v. Martin*, 114 P.3d 637, 642 (Wash. 2005) (requiring criminal malpractice plaintiffs to prove actual innocence by a preponderance of the evidence to state a cause of action); *Humphries v. Detch*, 712 S.E.2d 795, 801 (W. Va. 2011) (same); *see also Lamb v. Manweiler*, 923 P.2d 976, 979 (Idaho 1996) (noting that plaintiff did not dispute that in a criminal malpractice action the plaintiff "must establish the additional element of actual innocence of the underlying criminal charges"); *Adkins v. Dixon*, 482 S.E.2d 797, 802 (Va. 1997) (holding that actual guilt is a material consideration on issue of proximate cause).[3]

The *Ang* case from Washington exemplifies the reasoning of those courts that have adopted an actual innocence requirement. The Angs, a married couple who owned a medical examination company, became the target of a social security fraud investigation. *Ang*, 114 P.3d at 639.

---

[3]Some courts have conflated the granting of postconviction relief with innocence. *See, e.g.*, *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497–98 (Tex. 1995). In doing so, they have not distinguished between what the Washington Supreme Court termed legal innocence—a grant of postconviction relief—and actual innocence, a matter of factual proof. *See Ang*, 114 P.3d at 642. Because Barker has already received postconviction relief, and the original charges have not been pursued, only his actual, as opposed to legal, innocence is at issue here.

They were eventually indicted on eighteen criminal counts, including bank and tax fraud. *Id.* Their counsel attempted to negotiate a plea bargain, but the Angs rejected the proposed agreement. *Id.* The case went to trial, but just before the close of the prosecution's case, the Angs' attorneys recommended they accept a plea—one the Angs considered less attractive than previous offers. *Id.* The Angs agreed to plead guilty to two counts but allegedly only after Dr. Ang was told that his wife might be sexually assaulted in prison. *Id.*

Upon retaining new counsel, the Angs successfully moved to withdraw their pleas. *Id.* The case went to trial again, and the Angs were acquitted of all eighteen counts. *Id.* The Angs then filed a legal malpractice action against their original attorneys. *Id.* The jury in the malpractice action was instructed that the Angs had to prove they were innocent of the underlying criminal charges by a preponderance of the evidence. *Id.* The Angs lost their malpractice case and assigned error to the instruction on appeal. *Id.* at 641.

The Washington Supreme Court upheld the instruction, deciding that actual innocence—as well as relief from the underlying criminal charges—was a necessary component of a plaintiff's suit for criminal malpractice. *Id.* at 643. The court noted the Angs may have been legally innocent, as evidenced by the successful withdrawal of their guilty pleas and their subsequent acquittal of all charges, but that did not necessarily mean they were actually innocent of the criminal conduct they had been accused of in the prior proceedings. *Id.* at 641. In the court's view, actual innocence was "essential" to proving causation, both proximate and but-for causation. *Id.* at 642. Additionally, the court found that requiring criminal malpractice plaintiffs to prove their actual innocence

will prohibit criminals from benefiting from their own bad acts, maintain respect for our criminal justice systems procedural protections, remove the harmful chilling effect on the defense bar, prevent suits from criminals who may be guilty, [but] could have gotten a better deal, and prevent a flood of nuisance litigation.

*Id.* (quoting *Falkner v. Foshaug*, 29 P.3d 771, 776 (Wash Ct. App. 2001) (footnote omitted)).

As *Ang* illustrates, courts adopting the actual innocence element in criminal malpractice actions have been motivated by public policy concerns. Principal among these concerns is that "it would violate public policy to allow a person to profit from participating in an illegal act." *Humphries*, 712 S.E.2d at 800; *see Wiley*, 966 P.2d at 983 ("[P]ermitting a convicted criminal to pursue a legal malpractice claim without requiring proof of innocence would allow the criminal to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime." (quoting *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497 (Tex. 1995))).

Another rationale is that actual innocence prevents the former criminal defendant from shifting the responsibility for his or her conviction. *Wiley*, 966 P.2d at 986. If a plaintiff committed the crimes he or she was accused of, then he or she "alone should bear full responsibility for the consequences of [his or her] acts, including imprisonment. Any subsequent negligent conduct by a plaintiff's attorney is superseded by the greater culpability of the plaintiff's criminal conduct." *Id.* (quoting *Shaw v. State*, 861 P.2d 566, 572 (Alaska 1993)).

Also, courts have found that constitutional protections, such as postconviction relief for ineffectiveness of counsel, provide a sufficient remedy for guilty defendants. *Id.* at 988–89; *see Bailey*, 621 A.2d at 113 ("If a person is convicted of a crime because of the inadequacy of

counsel's representation, justice is satisfied by the grant of a new trial . . . . [but] if an *innocent person* is wrongfully convicted due to the attorney's dereliction, justice requires that he be compensated for the wrong which has occurred."). Moreover, courts have noted a substantial interest in preserving the availability of representation to criminal defendants. *Mahoney*, 727 A.2d at 999. Criminal defense counsel is often working for reduced fees or has been appointed at public expense, and "[t]he public has a strong interest in encouraging the representation of criminal defendants, particularly those who are ruled to be indigent." *Schreiber*, 814 So. 2d at 399 (quoting *Glenn*, 569 N.E.2d at 788). In declining to require criminal malpractice plaintiffs to prove actual innocence, courts might be "[s]etting the standard at a lower level [which] may well dampen counsels' willingness to enter the criminal defense arena." *Mahoney*, 727 A.2d at 1000. And further, the differing burdens of proof in criminal and malpractice actions could create confusion for the jury. *Wiley*, 966 P.2d at 990.

Additionally, these courts commonly focus on the causation element of a malpractice case in their reasoning. Many of them have asserted in some form that the plaintiff's criminal behavior—rather than the attorney's conduct—led to the plaintiff's predicament. *See, e.g., Rodriguez*, 609 N.W.2d at 374 ("We believe that it is the illegal conduct of a convicted criminal who files a malpractice claim, rather than any subsequent negligence of counsel, that is the cause in fact of any injuries flowing from the conviction."). Judge Posner perhaps best voiced this consideration in *Levine v. Kling*, a case in which the United States Court of Appeals for the Seventh Circuit determined that Illinois law required a criminal malpractice plaintiff to establish innocence, either by

postconviction relief or other means. *See* 123 F.3d 580, 582 (7th Cir. 1997).

> On [the plaintiff's] view there would be cases in which a defendant guilty in fact of the crime with which he had been charged, and duly convicted and imprisoned (perhaps after a retrial in which he was represented by competent counsel), would nevertheless obtain substantial damages to compensate him for the loss of his liberty during the period of his rightful imprisonment.
>
> Not only would this be a paradoxical result, depreciating and in some cases wholly offsetting the plaintiff's criminal punishment, but it would be contrary to fundamental principles of both tort and criminal law. Tort law provides damages only for harms to the plaintiff's legally protected interests, Restatement (Second) of Torts, § 1 comment d, § 7(1) (1965), and the liberty of a guilty criminal is not one of them. The guilty criminal may be able to obtain an acquittal if he is skillfully represented, but he has no right to that result . . . and the law provides no relief if the "right" is denied him.

*Id.*

Alaska has adopted a somewhat different approach. Instead of requiring the former criminal defendant to establish actual innocence, this approach allows the criminal defense attorney to raise actual guilt as an affirmative defense to the malpractice suit. *See Shaw*, 861 P.2d at 572. The attorney must prove her or his former client's guilt by a preponderance of the evidence, but in doing so, the attorney is not limited to the evidence admissible on the criminal charge. *Id.* at 573. In placing this burden on the defendant, the Alaska Supreme Court noted the plaintiff still must obtain postconviction relief before bringing the malpractice claim. *Id.* at 572. The court also cited the similarity between an actual guilt defense and other affirmative defenses in tort such as comparative negligence and assumption of the risk. *Id.* at 572 n.9.

As a third alternative, some courts have rejected an actual innocence requirement entirely. *See Godby v. Whitehead*, 837 N.E.2d 146, 151 (Ind. Ct. App. 2005) (reiterating the court's point from a prior case that "a criminal defendant does not have to prove his innocence before he files a legal malpractice claim"); *Mashaney v. Bd. of Indigents' Def. Servs.*, 355 P.3d 667, 687 (Kan. 2015) (rejecting the actual innocence rule in a jurisdiction that requires postconviction relief prior to filing a criminal malpractice suit); *see also Mylar v. Wilkinson*, 435 So. 2d 1237, 1239 (Ala. 1983), *modified in part on other grounds by Morrison v. Franklin*, 655 So. 2d 964, 966 (Ala. 1995) (noting that "the validity of [the defendant's] claim for relief in his criminal prosecution is not necessarily conclusive on his claim for civil damages"); *Rantz v. Kaufman*, 109 P.3d 132, 136 (Colo. 2005) (refusing to adopt the "exoneration rule," which would require criminal malpractice plaintiffs to obtain postconviction relief prior to filing suit); *Jepson v. Stubbs*, 555 S.W.2d 307, 313 (Mo. 1977) (concluding that the setting aside of a judgment of conviction is not a condition to maintaining a suit for malpractice arising from criminal representation); *Krahn v. Kinney*, 538 N.E.2d 1058, 1061 (Ohio 1989) (holding that the elements of proof for legal malpractice remain the same whether the action arises from civil or criminal representation).

The Kansas Supreme Court recently considered, and declined to adopt, an actual innocence requirement. *See Mashaney*, 355 P.3d at 687. The case involved an individual charged with one count of aggravated criminal sodomy and one count of aggravated indecent liberties with a child. *Id.* at 670. After the first trial ended in a mistrial, the individual was convicted in a second jury trial and sentenced to 442 months in prison. *Id.* at 670–71. Years later, Mashaney successfully moved to vacate or set aside his sentence, and his case was set for a new

trial. *Id.* at 671. At that point, the defendant agreed to enter an *Alford* plea to two counts of attempted aggravated battery and one count of aggravated endangerment of a child in return for the State dropping the original charges. *Id.* The court sentenced Mashaney to seventy-two months in prison, and he was released for time served. *Id.*

Mashaney subsequently filed a malpractice suit against his former trial counsel, his former appellate counsel, and the state board of indigent defense services. *Id.* He sought damages for the nearly eight years he spent in prison. *Id.* The court dismissed Mashaney's claim against the state board and granted judgment on the pleadings to the attorneys. *Id.* On appeal, the Kansas Court of Appeals held that a plaintiff as a threshold matter must prove actual innocence to pursue a criminal malpractice action. *Id.* at 672.

The Kansas Supreme Court reversed. *Id.* at 687. First, the court disagreed with the broad notion that public policy supports the actual innocence rule. *See id.* at 678. It indicated that the justifications for the rule were too simplistic and "no match for the complexities of a case such as this." *Id.* at 678, 687. Next, the court stated that requiring actual innocence produced inequitable results in that former defendants who received "lengthy prison sentences as a direct result of their lawyers' negligence will be deprived of any tort remedy for that malpractice and some lawyers representing criminal defendants will escape liability when their civil counterparts would not." *Id.* at 679, 687. The court added that actual innocence was based on a flawed conception of causation in tort law because if counsel "fails to demonstrate the State's inability to prove guilt beyond a reasonable doubt when a competent lawyer could have and would have done so, the client has been legally injured by being convicted and imprisoned," regardless of innocence. *Id.* at 684, 687.

Moreover, the court found the notion that actual innocence furthers the availability of criminal defense representation supported by judicial speculation rather than empirical evidence. *Id.* at 685, 687.

Lastly, the Kansas Supreme Court noted that in a prior decision, it had adopted the "exoneration rule," under which the criminal malpractice plaintiff had to obtain relief from her or his conviction before bringing any claim. *Id.* at 673–74 (discussing *Canaan v. Bartee*, 72 P.3d 911 (Kan. 2003)). It indicated that this requirement effectively precluded the bringing of frivolous malpractice claims by criminal defendants. *Id.* at 685.

This recent Kansas decision mirrors the recommendation of the Restatement of the Law Governing Lawyers. Regarding actions for malpractice by a criminal defendant, the Restatement concludes that "it is not necessary to prove that the convicted defendant was in fact innocent," although it notes that "most jurisdictions addressing the issue have stricter rules." Restatement (Third) of the Law Governing Lawyers § 53 cmt. *d,* at 392 (Am. Law Inst. 2000) [hereinafter Restatement]. The Restatement adds,

> As required by most jurisdictions addressing the issue, a convicted defendant seeking damages for malpractice causing a conviction must have had that conviction set aside when process for that relief on the grounds asserted in the malpractice action is available.

*Id.* Thus, this aspect of the Restatement is consistent with our holding in *Trobaugh.* *See* 668 N.W.2d at 583.

We often look to the Restatements for guidance. *See Rohlin Constr. Co. v. City of Hinton,* 476 N.W.2d 78, 80 (Iowa 1991) ("We often turn to Restatements of the Law . . . ."). We have previously relied on the Restatement of the Law Governing Lawyers when defining the scope of

the duty of care attorneys owe their clients. *See Sabin v. Ackerman*, 846 N.W.2d 835, 842 (Iowa 2014).

We find the approach taken by the Restatement and like-minded jurisdictions to be persuasive. The prerequisite that the malpractice plaintiff obtain judicial relief from her or his conviction, which the Restatement endorses and which we adopted in *Trobaugh* after "considering all of the issues presented and the wealth of commentary on this issue," serves as an important screen against unwarranted claims and "preserves key principles of judicial economy and comity." 668 N.W.2d at 583. But we do not think an additional actual innocence screen is appropriate. Such a prerequisite goes beyond respecting the criminal process—i.e., "judicial economy and comity"—and interposes an additional barrier to recovery that other malpractice plaintiffs do not have to overcome.

Furthermore, a criminal defendant already "must prove both that the lawyer failed to act properly and that, but for that failure, the result would have been different." Restatement § 53 cmt. *d,* at 392; *see also Vossoughi*, 859 N.W.2d at 649 (noting that to establish a prima facie claim of legal malpractice, the plaintiff must produce evidence showing the attorney's breach of duty caused actual injury). Often, the innocence or guilt of the client will enter into the causation inquiry that is part of the plaintiff's prima facie case. *See Mashaney*, 355 P.3d at 688 (Stegall, J., concurring). For example, if Barker's counsel had refused to let him plead guilty to the nonexistent crime of soliciting a minor to commit a sex act, would the State have pursued the original charges, assuming it could have done so? What would have been the outcome of those charges? Would Barker have been incarcerated anyway? A criminal defendant who was factually guilty of the crime for which he or she was

convicted—or at least guilty of a related crime or a crime with which he or she was originally charged—will likely confront significant causation issues in his legal malpractice action. We see no reason why such issues cannot be resolved, as they generally are in malpractice actions, by the fact finder.

Thus, we think the causation determination will frequently take into account the guilt or innocence of the client. And ultimately, we are not persuaded by the remaining public policy concerns other than causation. For example, while the notion that an individual should not "profit from participating in an illegal act" is a good general principle, *Humphries*, 712 S.E.2d at 800, it is too general to describe how our legal system actually operates. We do not bar criminal defendants who are guilty of their crimes from recovering overpayments from their criminal defense counsel, suing for clearly illegal searches, or suing the medical staff in the prison for medical malpractice. By analogy, a criminal defendant who is convicted of a crime due to legal malpractice, and gets that conviction set aside, should not be categorically barred from suing his or her former attorney just because the defendant may have been guilty of some lesser charge that would have resulted in a lower sentence.

Likewise, our legal malpractice precedents have not adopted the principle that "subsequent negligent conduct" by the attorney can be compared to the "culpability" of the client that required him to need legal services in the first place. *See Wiley*, 966 P.2d at 986; *cf.* Restatement (Third) § 54 cmt. *d*, at 404 (discussing the scope of comparative negligence in the context of legal malpractice and noting that "clients are entitled to rely on their lawyers to act with competence, diligence, honesty, and loyalty").

Additionally, while we wholeheartedly agree that "[t]he public has a strong interest in encouraging the representation of criminal defendants, particularly those who are ruled to be indigent," *Glenn,* 569 N.E.2d at 788, it also has an interest in encouraging competent representation. Attorneys who serve indigent persons in other contexts, such as legal aid attorneys, are not exempt from potential malpractice claims.

Finally, we are not persuaded that an actual innocence requirement is needed to prevent a proliferation of nuisance suits. A criminal malpractice plaintiff still must obtain relief from the conviction. *See Trobaugh,* 668 N.W.2d at 583; *see also Wiley,* 966 P.2d at 994 (Mosk, J., dissenting) (asserting that the postconviction relief requirement "will screen out frivolous malpractice claims" obviating the need for an actual innocence requirement). And unless the plaintiff's claim is based on standards of care and professionalism understood and expected by laypersons, the plaintiff will have to retain an expert to go forward. *See Wilson v. Vanden Berg,* 687 N.W.2d 575, 583 (Iowa 2004). Furthermore, attorneys will still be able to avail themselves of traditional malpractice defenses. *See* Cort Thomas, Note, *Criminal Malpractice: Avoiding the Chutes and Using the Ladders,* 37 Am. J. Crim. L. 331, 342 (2010) (outlining available defenses for defendant attorneys in criminal malpractice actions).

Barker's former attorneys emphasize that persons suing the State under chapter 663A for wrongful imprisonment are required to prove actual innocence. *See* Iowa Code § 663A.1(2) (requiring proof of actual innocence by clear and convincing evidence); *State v. DeSimone,* 839 N.W.2d 660, 665 (Iowa 2013); *State v. McCoy,* 742 N.W.2d 593, 599 (Iowa 2007). However, the two types of actions serve different purposes. The wrongful-imprisonment statute is a limited exception to sovereign

immunity intended to provide some compensation regardless of fault to "innocent persons who have been wrongfully convicted and imprisoned." *McCoy*, 742 N.W.2d at 596. A legal malpractice claim is designed to compensate the client for her or his attorney's breach of duty. *See Sladek v. K Mart Corp.*, 493 N.W.2d 838, 840 (Iowa 1992) ("The goal in legal malpractice is to put clients in the position they would have occupied had the attorney not been negligent.").

To the extent statutes are relevant, we believe Iowa Code section 815.10(6) has more bearing on the present case than chapter 663A. Section 815.10(6), which governs appointed counsel, provides,

> An attorney appointed under this section is not liable to a person represented by the attorney for damages as a result of a conviction in a criminal case unless the court determines in a postconviction proceeding or on direct appeal that the person's conviction resulted from ineffective assistance of counsel, and the ineffective assistance of counsel is the proximate cause of the damage.

Thus, the legislature has established immunity for appointed counsel unless a postconviction court determines that the client's "conviction resulted from ineffective assistance of counsel." This is similar to the "relief from a conviction" prerequisite that we recognized under the common law in *Trobaugh*. *See* 668 N.W.2d at 583. Section 815.10(6) does not contain an actual innocence requirement, though. In short, Barker's former attorneys ask us to impose an actual innocence requirement as a matter of common law that the legislature has declined to provide for appointed counsel as a matter of statutory law.

Hence, for the reasons stated, we conclude that a client's showing of actual innocence is not a prerequisite to bringing a legal malpractice claim against a former criminal defense attorney.

**IV. Conclusion.**

For the foregoing reasons, we reverse the summary judgment of the district court and remand for further proceedings consistent with this opinion.[4]

**REVERSED AND REMANDED.**

All justices concur except Zager and Waterman, JJ., who dissent.

---

[4]Capotosto and Magee's summary judgment motion argued as an alternative ground that Barker could not establish causation as a matter of law. The district court did not reach this issue, granting summary judgment only on the basis of Barker's inability to establish his actual innocence. On appeal, Magee argues this alternative ground only briefly, and Capotosto does not argue it at all. In light of the fact that the district court did not reach this issue, we believe it would be prudent for us not to reach it as well. We leave it open for the parties to brief and for the district court to consider on remand.

**ZAGER, Justice (dissenting).**

I respectfully dissent. For the reasons stated below, I would affirm the summary judgment ruling of the district court and join the majority of states in adopting the "actual innocence" requirement for a criminal defendant to pursue a criminal malpractice claim.

The majority has done a thorough analysis of the dozen or more jurisdictions that have considered and adopted the actual innocence requirement in criminal malpractice claims. *See Wiley v. County of San Diego*, 966 P.2d 983, 991 (Cal. 1998); *Schreiber v. Rowe*, 814 So. 2d 396, 399–400 (Fla. 2002) (per curiam); *Glenn v. Aiken*, 569 N.E.2d 783, 787–88 (Mass. 1991); *Rodriguez v. Nielsen*, 609 N.W.2d 368, 374–75 (Neb. 2000); *Morgano v. Smith*, 879 P.2d 735, 738 (Nev. 1994); *Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A.*, 727 A.2d 996, 999–1000 (N.H. 1999); *Carmel v. Lunney*, 511 N.E.2d 1126, 1128 (N.Y. 1987); *Ang v. Martin*, 114 P.3d 637, 642 (Wash. 2005); *Humphries v. Detch*, 712 S.E.2d 795, 801 (W. Va. 2011). The majority also did a thorough analysis of alternative approaches to the actual innocence requirement in other jurisdictions, so I will not repeat them here. While the majority does not find the justifications utilized by the above jurisdictions persuasive, whether based on policy considerations or not, I do find them persuasive. We only need to look at the facts of this case to demonstrate that a clear, common sense approach requiring a prerequisite of actual innocence is the appropriate approach.

Barker was initially charged with several offenses, including attempted enticement of a minor, an aggravated misdemeanor. Through plea negotiations, the court granted the State's request to amend the trial information to an offense that was later determined to not be a

recognizable crime. Barker pleaded guilty to the crime and was sentenced to prison in December 2006. The prison sentence was suspended. After less than two years of unsuccessful supervised probation, Barker's probation was revoked on October 30, 2008. Barker filed an application for postconviction relief on October 1, 2009, for the first time raising an ineffective-assistance-of-counsel claim because there was no factual basis for his guilty plea to solicitation of a minor to engage in a sex act. In a written ruling, the district court granted the application on February 28, 2011, properly ruling that counsel had been ineffective for allowing Barker to plead guilty to a crime that did not exist. The court vacated the conviction and sentence.

It is at this point that the actual innocence requirement may have its greatest impact on our analysis. Postconviction relief returns the case to the district court for further proceedings. Once there, it is left to the unbridled discretion of the county attorney whether to pursue the original charges, or any charges. In this case, the county attorney apparently made the determination not to continue with the prosecution of Barker. There are a multitude of reasons why a county attorney may choose not to further prosecute a defendant. It is not up to us to second guess those reasons. However, Barker does not dispute that his conduct was the crime of attempted enticement of a child in violation of Iowa Code section 710.10(3), an aggravated misdemeanor, the first count charged in the original trial information. *See* Iowa Code § 710.10(3) (2005). Clearly under the actual innocence requirement employed by the majority of jurisdictions, a plea to the charge would eliminate any cause of action for criminal malpractice, as I think it properly should. In my opinion, an admission by the malpractice claimant of actual guilt to a crime should also eliminate any claim for criminal malpractice. Whether

there is a conviction for a criminal offense or an acknowledgement of guilt by the defendant, this is a logical basis to preclude a claim for criminal malpractice.

This brings us to an analysis of the concept of exoneration. The majority cites with approval the recent Kansas Supreme Court case of *Mashaney v. Board of Indigents' Defense Services*, 355 P.3d 667 (Kan. 2015). In that case, the court noted that in a prior decision it had adopted the "exoneration rule" under which the defendant had to obtain relief from his or her conviction before bringing a criminal malpractice claim. *Id.* at 673–74 (discussing *Canaan v. Bartee*, 72 P.3d 911 (Kan. 2003)). As noted by the majority, the Kansas approach mirrors that taken by the Restatement of the Law Governing Lawyers. *Compare id.* at 681–87, *with* Restatement (Third) of the Law Governing Lawyers § 53, at 389 (Am. Law Inst. 2000). With regard to criminal malpractice claims, the Restatement concludes that "it is not necessary to prove that the convicted defendant was in fact innocent," though it notes that "most jurisdictions addressing the issue have stricter rules." Restatement § 53 cmt. *d*, at 392. The Restatement adds, "As required by most jurisdictions addressing the issue, a convicted defendant seeking damages for malpractice causing a conviction must have had that conviction set aside when process for that relief on the grounds asserted in the malpractice action is available." *Id.* As noted by the majority, this is the approach taken by the Iowa legislature with respect to court-appointed counsel. *See* Iowa Code § 815.10(6). However, there are two problems with reliance on this Code section. First, we need to have an approach which addresses all criminal malpractice claims, not just those against court-appointed counsel. Second, even the statute itself requires that the "ineffective assistance of counsel is the *proximate cause* of the

damage." *Id.* (emphasis added). The issue of proximate cause will be discussed later in this dissent. While I acknowledge that we often look to the Restatement for guidance, we should only rely on the Restatement to the extent we are persuaded that it is correct. I do not find the approach taken by the Restatement and like-minded jurisdictions to be persuasive.

The Kansas court believed that this exoneration requirement effectively precluded the bringing of frivolous malpractice claims by criminal defendants. *Mashaney*, 355 P.3d at 685. Similarly, the majority concludes that the exoneration rule serves as an important screen against unwarranted claims and "preserves key principles of judicial economy and comity." *Trobaugh v. Sondag*, 668 N.W.2d 577, 583 (Iowa 2003). While I agree it is an important screen, I do not think it goes far enough. The purpose of postconviction relief is not to determine whether a convicted defendant is actually innocent, but rather whether that person is not legally guilty. Postconviction relief exists to provide relief for defendants, irrespective of their actual innocence. That is to say, I agree that postconviction relief is a necessary, but not sufficient, prerequisite for raising a criminal malpractice claim. As will be discussed, actual innocence is necessary to establish an unbroken causal nexus between the criminal defense counsel's alleged malpractice and the harm suffered.

In advocating for the adoption of the actual innocence requirement, a causation analysis needs to be part of the review of any potential criminal malpractice action. However, this analysis and screening is more appropriately conducted prior to trial, either through a motion to dismiss the claim or through a motion for summary judgment as was attempted here. The majority properly sets forth what a party must show to establish a prima facie claim of legal malpractice. The third element is

that the attorney's breach was the proximate cause of injury to the client. *Ruden v. Jenk*, 543 N.W.2d 605, 610 (Iowa 1996). As noted by the Washington Supreme Court:

> The fourth element, proximate causation, includes "[c]ause in fact and legal causation." Cause in fact, or "but for" causation refers to "the physical connection between an act and an injury." In a legal malpractice trial, the "trier of fact will be asked to decide what a reasonable jury or fact finder [in the underlying trial or 'trial within a trial'] would have done *but for* the attorney's negligence." Legal causation, however, presents a question of law: "It involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact." To determine whether the cause in fact of a plaintiff's harm should also be deemed the legal cause of that harm, a court may consider, among other things, the public policy implications of holding the defendant liable.

*Ang*, 114 P.3d at 640 (quoting *Hartley v. State*, 698 P.2d 77, 82–83 (Wash. 1985); *Daugert v. Pappas*, 704 P.2d 600, 603 (Wash. 1985) (emphasis added)).

I agree with the position articulated by the Washington Supreme Court that the need to establish actual innocence, not simply legal innocence, is essential to proving proximate causation—both cause in fact and legal causation. *Id.* In *Ang*, the plaintiffs claimed that legal causation or innocence was established by a not guilty verdict in a criminal prosecution. *Id.* at 641. In our case, according to the majority, legal causation is established by the finding of ineffective assistance of counsel in a postconviction action. I do not believe that legal causation can be established under either circumstance absent actual innocence. Since I believe that legal causation is a matter of law that can be determined by the district court, and that this can only be established by actual innocence, the district court was correct in granting summary judgment to the defendants.

The Washington Supreme Court also included within its proximate cause analysis a consideration of public policy in support of requiring actual innocence:

> Unless criminal malpractice plaintiffs can prove by a preponderance of the evidence their actual innocence of the charges, their own bad acts, not the alleged negligence of defense counsel, should be regarded as the cause in fact of their harm. Likewise, if criminal malpractice plaintiffs cannot prove their actual innocence under the civil standard, they will be unable to establish, in light of significant public policy considerations, that the alleged negligence of their defense counsel was the legal cause of their harm. Summarizing the policy concerns, the *Falkner* court observed that, "[r]equiring a defendant to prove by a preponderance of the evidence that he is innocent of the charges against him will prohibit criminals from benefitting from their own bad acts, maintain respect for our criminal justice system[']s procedural protections, remove the harmful chilling effect on the defense bar, prevent suits from criminals who may be guilty, [but] could have gotten a better deal, and prevent a flood of nuisance litigation."

*Id.* at 642 (quoting *Falkner v. Foshaug*, 29 P.3d 771, 776 (Wash. Ct. App. 2001) (footnote omitted)). These are all sound policy reasons which support adopting an actual innocence requirement.

On a final note, the majority gives inadequate weight to the significant policy reasons for requiring proof of actual innocence as an additional prerequisite for a prima facie criminal malpractice case. *See* Cort Thomas, Note, *Criminal Malpractice: Avoiding the Chutes and Using the Ladders*, 37 Am. J. Crim. L. 331, 345–46 (2010) [hereinafter Thomas] (outlining the various public policy reasons that courts have found persuasive when adopting an actual innocence requirement). New York has adopted the actual innocence requirement in criminal malpractice cases where a defendant is seeking pecuniary damages. *See Dombrowski v. Bulson*, 971 N.E.2d 338, 340–41 (N.Y. 2012); *Carmel*, 511 N.E.2d at 1128. In a more specific case, when New York's highest court was faced

with a criminal malpractice case where the defendant was also seeking nonpecuniary damages, the court recognized that expanding criminal malpractice liability would restrict access to justice, stating that:

> Allowing this type of recovery would have, at best, negative and, at worst, devastating consequences for the criminal justice system.  Most significantly, such a ruling could have a chilling effect on the willingness of the already strapped defense bar to represent indigent accused.  Further, it would put attorneys in the position of having an incentive not to participate in post-conviction efforts to overturn wrongful convictions.

*Dombrowski*, 971 N.E.2d at 340–41.  The same rationale extends to the situation before us, because the approach adopted by the majority places an unnecessary burden on the defense bar.  I also note that, in this case, the majority has not applied any limiting language that would restrict criminal malpractice liability to only pecuniary damages.

The need to attract competent criminal defense attorneys is great.  "The public has a strong interest in encouraging the representation of criminal defendants, particularly those who are ruled to be indigent."  *Glenn*, 569 N.E.2d at 788.  Establishing an actual innocence requirement "helps to encourage that kind of legal representation by reducing the risk that malpractice claims will be asserted and, if asserted, will be successful."  *Id.*  This is particularly true today, when more than eighty percent of all criminal defendants in this country are represented by court-appointed counsel, under the burden of increasing caseloads and shrinking budgets.  Peter A. Joy, *Ensuring the Ethical Representation of Clients in the Face of Excessive Caseloads*, 75 Mo. L. Rev. 771, 774 (2010).  While certainly not an excuse, I believe any attorney with a substantial criminal defense practice will be subject to a significant increase in vexatious litigation with its corresponding expense, absent

some logical gate-keeping function—which the actual innocence requirement provides.

This can be easily accomplished and is not a drastic change in our tort law. It simply requires that a plaintiff plead actual innocence as a prerequisite to the commencement of a criminal malpractice action. The true victims of criminal malpractice, who may be entitled to relief, will become obvious. It makes no sense to simply allow all exonerated defendants, for whatever reason, to be entitled to file a criminal malpractice action, perform discovery, proceed to trial, and then expect the jury to decide whether the acts of the attorney were the proximate cause of damage to the defendant. This is an unnecessary expense to all parties concerned and a waste of judicial resources. *See* Thomas, 37 Am. J. Crim. L. at 346 (noting that one pervasive public policy concern is flooding courts with unnecessary cases). The clear and rational solution is to adopt an actual innocence requirement, as a majority of jurisdictions have done. Then, the courts can evaluate the pleadings, review the factual basis of the claim, allow claims with merit to proceed, and dispose of meritless claims. This is what our court system is designed to do and is fair and reasonable to all parties involved.

For the above reasons, I believe a reasonable threshold showing of actual innocence should be a prerequisite to bringing a criminal malpractice claim, as adopted by the majority of jurisdictions. Plaintiffs would then be allowed to utilize our traditional tort rules in the processing of their claims. Since the plaintiff in this action could not meet this reasonable threshold of actual innocence, I would affirm the summary judgment entered by the district court.

Waterman, J., joins this dissent.