# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 29 2016, 7:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Jason T. Myers
Plainfield, Indiana

ATTORNEYS FOR APPELLEES
GRAHAM AND TRUEBLOOD &
GRAHAM, P.C.

Robert J. Feldt
Kyle B. Lawrence
Philip H. Getter
Eichhorn & Eichhorn, LLP
Hammond, Indiana

ATTORNEYS FOR APPELLEES
HUTCHISON AND MAXSON

Daniel M. Witte
Travelers Staff Counsel
Indianapolis, Indiana

James O. Giffin
Miranda W. Bernadac
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jason T. Myers,

*Appellant*,

v.

Thomas D. Maxson; Amy L. Hutchison; Bruce W. Graham; and Trueblood & Graham (In their Official and Individual Capacities),

*Appellees*.

March 29, 2016

Court of Appeals Case No. 79A05-1501-CT-39

Appeal from the Tippecanoe Superior Court

The Honorable Les A. Meade, Judge

Trial Court Cause No. 79D05-1302-CT-1

**Brown, Judge.**

Jason T. Myers appeals the trial court's order granting summary judgment in favor of Thomas Maxson, Amy L. Hutchison, Bruce W. Graham and Trueblood & Graham, P.C. (collectively, the "Appellees"). He raises five issues which we consolidate and restate as:

I. Whether the trial court erred when it denied Myers's requests for the transcripts of the evidentiary hearing of his May 23, 2011 post-conviction proceeding; and

II. Whether the trial court erred when it granted the Appellees' motions for summary judgment.[1]

---

[1] Myers also claims the trial court violated the Due Process Clause of the Fourteenth Amendment and Article 1, Section 12 of the Indiana Constitution. His failure to point to relevant portions of the record or develop an argument with respect to the due process issue he attempts to raise, results in waiver of that issue on appeal. *See Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind. Ct. App. 2002) (holding argument waived for failure to provide cogent argument), *reh'g denied, trans. denied*.

We affirm.

## *Facts and Procedural History*

The facts relating to Myers's conviction for battery resulting in serious bodily injury as a class C felony, which provide context for the issues raised in his appeal, are as follows:

> In the early morning hours of May 10, 2003, Felicia Norris ("Norris") joined two friends at a bar in Lafayette. While there, she met Myers, her "on-again/off-again" boyfriend. Tr. p. 16. Norris and Myers discussed "hanging out later." Tr. p. 17. Norris and her friends left the bar and returned to her apartment. Later, Myers and several of his friends joined them.
>
> When the group got too loud, Norris asked everyone to leave. Meanwhile, Myers was upset and defensive because Norris was speaking with his brother. When Myers started to leave, Norris grabbed his arm because she wanted to talk to him. The two began to yell, scream, and push each other and Norris slapped Myers on the head several times. Myers pinned Norris against the wall and held her by the throat with both hands, so that her feet were barely touching the ground. One of Norris's friends tried but was unable to pull Myers away from Norris. Myers struck Norris in the nose with his fist, causing a compound nasal fracture.
>
> Myers then fled the apartment. A short time later, he called Norris to check on her. He told her to go to the hospital, but threatened to kill her and everyone in the house if she pressed charges against him. Tr. p. 23. As the result of her injuries, Norris received five stitches, suffered bruising, swelling, and pain, and later underwent surgery.

*Myers v. State* ("*Myers I*"), No. 79A05-0507-CR-405, slip op. at 2-3 (Ind. Ct.
App. August 23, 2006), *trans. denied*.

[3]     Maxson, a police officer with the Lafayette Police Department, arrested Myers
on May 11, 2003.  At the time of the arrest, Myers told Maxson that he was
acting in self-defense, and Maxson told Myers he would note that Myers's
injuries were less severe than those of the complaining party.  On June 20,
2003, the Tippecanoe County Prosecutor's Office charged Myers with battery
resulting in serious bodily injury as a class C felony; battery as a class A
misdemeanor; confinement as a class D felony; and criminal recklessness
resulting in serious bodily injury as a class D felony.  *Id.* at 3.

[4]     Myers initially hired private counsel, but the Tippecanoe County Public
Defender was later appointed to represent him, and on November 11, 2003,
Hutchison entered an appearance on Myers's behalf.  On February 24, 2005,
Myers submitted to the court a *pro se* motion to dismiss based on an alleged
violation of Criminal Rule 4(C),[2] and on March 11, 2005, the court scheduled a

---

[2] Criminal Rule 4(C) provides that:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period
> in aggregate embracing more than one year from the date the criminal charge against such
> defendant is filed, or from the date of his arrest on such charge, whichever is later; except where
> a continuance was had on his motion, or the delay was caused by his act, or where there was
> not sufficient time to try him during such period because of congestion of the court calendar;
> provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a
> timely motion for continuance as under subdivision (A) of this rule.  Provided further, that a
> trial court may take note of congestion or an emergency without the necessity of a motion, and
> upon so finding may order a continuance.  Any continuance granted due to a congested
> calendar or emergency shall be reduced to an order, which order shall also set the case for trial
> within a reasonable time.  Any defendant so held shall, on motion, be discharged.

two-day jury trial for June 28, 2005. The trial was held as scheduled, and Maxson testified that he could not recall whether a May 11, 2003 booking photograph accurately depicted Myers's physical appearance at the time of his arrest. Myers requested to see the booking photograph, told Hutchison that she should use the photograph in her cross-examination of Maxson, and that she should re-call a previous witness to present an alleged inconsistent statement to support Myers's claim that he had acted in self-defense during the events on May 10, 2003. In response to Myers's requests that she use his booking photograph and re-call the previous witness, Hutchison advised Myers that the booking photograph was probably not admissible and that re-calling the previous witness might be damaging because the witness's statement referred to Myers's drug use. Hutchison sought the advice of a long-time investigator who explained to Myers that the witness's statement related to Myers's drug use. Myers ultimately decided not to use the booking photograph and was convicted of battery as a class C felony. He was sentenced on September 29, 2005.

[5] On October 20, 2005, Graham entered an appearance on Myers's behalf and filed a notice of appeal. On August 23, 2006, this Court issued an opinion affirming Myers's felony battery conviction. *See Myers I*, slip op. at 1. On Myers's behalf, Graham filed a petition to transfer to the Indiana Supreme Court, and the petition was denied on October 3, 2006. After notifying Myers of the outcome of the transfer petition, Myers wrote Graham a letter in which he accused Graham of ineffective assistance of counsel in appealing his felony conviction for battery and threatened Graham with "a malpractice action" for

his failure to assert a Criminal Rule 4(C) violation. Appellant's Appendix at 160.

[6] On March 5, 2008, Myers, *pro se*, filed a petition for post-conviction relief from his 2005 battery conviction, alleging ineffective assistance of counsel.[3] On April 1, 2008, the court appointed the Indiana Public Defender to represent him. On December 9, 2010, Deputy Public Defender Gregory Lewis met with Myers, who was incarcerated on unrelated drug charges,[4] to discuss post-conviction remedies available to him. Lewis advised Myers that the court's scheduling of his trial date may have violated Criminal Rule 4(C).

[7] Beginning in April 2011, Myers began sending Douglas Masson, the Tippecanoe County Attorney, a series of letters related to allegations of legal malpractice against Hutchison. Masson employed a policy of "retain[ing] the envelope if a letter is sent using certified or registered mail," he did not have "any envelopes associated with the letters from Mr. Myers," and it was his belief "the letters were not received via registered or certified mail." *Id.* at 67. Myers's April 4, 2011 letter contained headings titled "Discovery Rule" which attempts to explain his reasons why the discovery rule should apply to his case, "Compensatory Damages" which states his alleged mental health problems

---

[3] Myers's petition for post-conviction relief is not in the record.

[4] Graham's designated evidence contains Myers's conviction of four counts of dealing in cocaine as class A felonies for which he received a thirty-year sentence with five years suspended to probation. *See Myers v. State* ("*Myers II*"), No. 79A02-0606-CR-499 (Ind. Ct. App. May 31, 2007).

resulting from the alleged malpractice, and "Punitive Damages" which he bases on Hutchison's failure to identify the Criminal Rule 4(C) Violation. Another letter, dated April 26, 2011, references a request Myers made to Tippecanoe County's insurance company to settle his alleged malpractice claim against Hutchison for her failure to file a motion to dismiss on the basis of Criminal Rule 4(C). Hutchison also received a letter from Myers in late April or early May 2011, which enclosed unsigned and undated materials as well as certain documents stemming from his battery conviction, direct appeal, and correspondence with his counsel for his petition for post-conviction relief.

[8] On April 30, 2012, after an evidentiary hearing, the post-conviction court concluded that Myers received ineffective assistance of trial and appellate counsel and vacated his battery conviction on the basis of a Criminal Rule 4(C) violation. Myers remains incarcerated for his conviction for dealing in cocaine. *See Myers II*, slip op. at 11-12.

[9] On December 6, 2012, Myers filed a complaint against the Appellees asserting a "Brady[5] type due process violation, legal malpractice, constructive fraud and intentional infliction of emotional distress" by the Appellees. *Id.* at 12. Myers's complaint requested compensatory damages related to his felony battery conviction, special damages for his inability to mitigate the penalty in another crime and present potentially exculpatory evidence at the battery trial, and

---

5 *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963).

alleged mental health issues and drug addiction stemming from the trial's outcome. He requested punitive damages from the Appellees. He also filed a supporting brief and a motion requesting the trial court to order a court reporter, at no cost to him, to prepare and deliver transcripts of his May 23, 2011 post-conviction evidentiary hearing.

[10] On February 4, 2013, Maxson filed a motion to dismiss Myers's claims pursuant to Indiana Trial Rule 12(B)(6). On June 17, 2013, Hutchison filed a motion for summary judgment, a brief in support of the motion, and a designation of evidence. On the same day, Graham and Trueblood & Graham filed a motion for summary judgment, a brief in support of the motion, and their designation of evidence.[6] Myers responded to the motions for summary judgment filed by Hutchison, Graham and Trueblood & Graham, and to Maxson's motion to dismiss on July 22, 2013 and filed an additional designation of evidence.

[11] On August 1, 2013, the court held a hearing on the parties' pending motions, and on January 2, 2014, granted the motions for summary judgment filed by Hutchison, Graham and Trueblood & Graham, and denied Maxson's motion to dismiss. Myers appealed.

---

[6] Graham and Trueblood & Graham also filed a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6). It appears that the court did not rule upon this motion.

[12] On January 28, 2014, while Myers's appeal of the court's January 2 order was pending, Maxson filed a motion for summary judgment and designation of evidence. On April 2, 2014, Maxson filed a motion for entry of judgment on his motion for summary judgment. On April 7, 2014, Myers responded to Maxson's motion, requesting additional time to file his answer due to the pendency of his appeal.

[13] On May 16, 2014, this Court granted the motions to dismiss appeal filed by Hutchison, and Graham and Trueblood & Graham and dismissed Myers's appeal with prejudice. Myers sought rehearing and transfer of this Court's order, both of which were denied.

[14] On August 21, 2014, Myers filed an answer to Maxson's motion for summary judgment, and on October 3, 2014, he filed an addendum to his answer to Maxson's motion. He did not include a designation of evidence. On December 16, 2014, the trial court held a hearing on Maxson's motion for summary judgment, and, on December 29, 2014, granted the motion and made its prior awards of summary judgment to Hutchison, Graham, and Trueblood & Graham final judgments. On January 5, 2015, Myers filed a motion for relief from judgment and attached a letter he sent to the Lafayette Police Department which, he argued, established his compliance with the Indiana Tort Claims Act (the "ITCA"). On January 23, 2015, Myers filed a notice of appeal from the trial court's July 16, 2013, August 1, 2013, January 2, 2014, and December 29,

2014 orders.[7]  The court held a hearing on the motion for relief from judgment on February 17, 2015 and denied the motion the following day.

### *Discussion*

[15] We initially observe that Myers is proceeding *pro se*.  Such litigants are held to the same standard as trained counsel.  *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*.

### I.

[16] The first issue is whether the court erred when it denied Myers's requests for the transcript of the evidentiary hearing of his post-conviction proceeding.  Myers argues that his status as indigent entitles him to a free transcript of the May 23, 2011 evidentiary hearing during his post-conviction relief proceedings, and he cites to *Campbell v. Criterion Grp.*, 588 N.E.2d 511, 517 (Ind. Ct. App. 1992), *adopted in part, vacated in part* 605 N.E.2d 150 (Ind. 1992) in support.  He cites to a portion of the Court of Appeals opinion in *Campbell* which was subsequently vacated by the Indiana Supreme Court.

[17] On transfer, the Indiana Supreme Court opined that where an indigent party seeks a transcript but is unable to afford the expense of preparing it, the Indiana Rules of Appellate Procedure provide a narrowly tailored solution, Appellate Rule 7.2(A)(3)(c), which allows for preparing a statement of evidence when no

---

[7] Myers does not appeal from the denial of his motion for relief from judgment.

transcript is available. *Campbell v. Criterion Grp.*, 605 N.E.2d 150, 160 (Ind. 1992). At the time, Appellate Rule 7.2(A)(3)(c) provided, in part, that "[i]f no report of all or part of the evidence or proceedings at the hearing or trial was or is being made, or if a transcript is unavailable, a party may prepare a statement of the evidence or proceedings from the best available means, including his recollection."[8] The Court held that unavailability of the transcript, for purposes of the rule, includes the situation where "an indigent is unable to bear the costs of its preparation," and that agreed statements[9] would also be "an acceptable alternative." *Id.* at 160-161.

[18] Myers has been determined to be indigent and his request to the trial court to order the post-conviction relief court to prepare a transcript of the hearing was denied. He had available to him the mechanism set forth in Appellate Rule 31(A) to assist in his creation of the transcript on appeal, and there is no

---

[8] The substance of Appellate Rule 7.2(A)(3)(c) is now found at Appellate Rule 31(A), which provides in substantially similar language, that "[i]f no Transcript of all or part of the evidence is available, a party or the party's attorney may prepare a verified statement of the evidence from the best available sources, which may include the party's or the attorney's recollection."

[9] At the time, Appellate Rule 7.3, titled "Record on agreed statement," provided:

> When the questions presented by an appeal to a court on appeal can be determined without an examination of all the pleadings, evidence, and proceedings in the court below, the parties may prepare and sign a statement of the case showing how the questions arose and were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the questions by the court on appeal. The statement shall include a copy or summary of as much of the judgment appealed from as is relevant, a copy of the notice of appeal with its filing date, and a statement of the issues to be relied on by the appellant. If the statement conforms to the truth, it, together with such additions as the court may consider necessary fully to present the questions raised by the appeal, shall be approved by the trial court and shall then be certified to the court on appeal as the record on appeal.

The substance of this rule is now found at Appellate Rule 33.

indication in the record that Myers pursued this option. Thus, we cannot say that Myers is entitled to a copy of the transcript of his May 23, 2011 post-conviction hearing prepared at public expense.

## II.

The next issue is whether the court erred in granting summary judgment in favor of the Appellees. We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.*

Myers contends that summary judgment was improperly granted in favor of each of the Appellees on his claims.

### A. Graham and Trueblood & Graham

Myers argues that summary judgment should not have been granted in favor of Graham and Trueblood & Graham and asserts that, because he is a layperson who had only suspicion that malpractice related to Graham's failure to raise the

Criminal Rule 4(C) violation in his appeal in *Myers I*, which occurred in October 2006, the two-year statute of limitations should be tolled. He maintains that on October 12, 2006, the date he wrote Graham a letter threatening a malpractice action, he did not have actual knowledge of a Criminal Rule 4(C) violation. He also posits that *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2764 (1994), supports his position that the statute of limitations period should not have begun to accrue until the post-conviction court's order vacated his felony battery conviction on the basis of the Criminal Rule 4(C) violation. He states that *Scruggs v. Allen Cnty.*, 829 N.E.2d 1049 (Ind. Ct. App. 2005), *reh'g denied*, through its adoption of the *Heck* rule in a claim involving false imprisonment and violations of the Indiana Constitution, impliedly overruled other Indiana decisions which establish that the accrual date for a claim of legal malpractice occurs when a conviction is vacated.

[22] Graham and Trueblood & Graham maintain that Myers's claim is barred by the applicable statute of limitations, pointing out that the designated evidence shows that Myers was aware of his alleged legal malpractice claim on October 12, 2006. Graham also posits that Myers's awareness of a potential action against him is demonstrated by Myers's filing of a petition for post-conviction relief on March 5, 2008, and that using either date the complaint is not timely filed. Graham argues that Myers misapplies the discovery rule as it relates to determining when the statute of limitations period begins to run, and points to designated evidence showing Myers had tried to hire multiple lawyers in 2009 to bring a malpractice action against Graham, that those lawyers informed him

that his time was running out to file a claim, and that, contrary to Myers's assertions that he had merely a layman's "suspicion" of legal malpractice, it was Myers's lack of resources to hire a lawyer or convince one to file a claim on his behalf that prevented him from filing a complaint within the period outlined by the statute of limitations. Appellee-Graham's Brief at 17. Graham further contends that Myers has waived his arguments as to application of the *Heck* rule, and that, waiver notwithstanding, the *Heck* rule does not apply to the accrual date for the statute of limitations in legal malpractice cases, and that *Scruggs* does not impliedly overrule relevant Indiana decisions determining the accrual date for a claim of legal malpractice.

[23] The statute of limitations defense is particularly suitable as a basis for summary judgment. *Anonymous Physician v. Wininger*, 998 N.E.2d 749, 751 (Ind. Ct. App. 2013). When the moving party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced beyond the statutory period, the burden shifts to the nonmovant to establish an issue of fact material to a theory that avoids the defense. *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind. 2000), *reh'g denied*; *see also Manley*, 992 N.E.2d at 674.

[24] The statute of limitations for a claim of legal malpractice is two years. Ind. Code § 34-11-2-4. For a cause of action to accrue, it is not necessary that the full extent of damage be known or even ascertainable, but only that some ascertainable damage has occurred. *Doe v. United Methodist Church*, 673 N.E.2d 839, 842 (Ind. Ct. App. 1996), *trans. denied*. "Further, legal malpractice actions

are subject to the 'discovery rule,' which provides that the statute of limitations does not begin to run until such time as the plaintiff knows, or in the exercise of ordinary diligence could have discovered, that he had sustained an injury as the result of the tortious act of another." *Biomet Inc. v. Barnes & Thornburg*, 791 N.E.2d 760, 765 (Ind. Ct. App. 2003), *trans. denied*. For purposes of the discovery rule, reasonable diligence "'means simply that an injured party must act with some promptness where the acts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist.'" *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 689 (Ind. Ct. App. 2006) (quoting *Mitchell v. Holler*, 311 S.C. 406, 429 S.E.2d 793, 795 (1993)). A criminal defendant does not have to prove his innocence before filing a legal malpractice claim. *Silvers v. Brodeur*, 682 N.E.2d 811, 818 (Ind. Ct. App. 1997), *trans. denied*.

[25] The designated evidence shows that Myers was aware of a potential legal malpractice claim[10] when he threatened Graham and Trueblood & Graham, on October 12, 2006, with a possible future malpractice action based on the failure to present argument related to the Criminal Rule 4(C) issue on appeal. Ascertainable damage occurred to Myers when Graham failed to raise the

---

[10] We note that Myers's allegations of constructive fraud and intentional infliction of emotional distress in his complaint are substantively part of his legal malpractice claim. *See Keystone Distribution Park v. Kennerk, Dumas, Burke, Backes, Long, and Salin*, 461 N.E.2d 749, 752 (Ind. Ct. App. 1984) (treating a claim for constructive fraud as, substantively, one for legal malpractice for purposes of a statute of limitations analysis).

Criminal Rule 4(C) issue on direct appeal, and, at that point, the statute of limitations period began to accrue. Thus, Myers had two years at least from that date to file his complaint for legal malpractice. After his October 12, 2006 letter threatening a malpractice action against Graham and Trueblood & Graham, Myers proceeded to file a petition for post-conviction relief with the trial court on March 5, 2008, and the record also shows that in 2009 Myers sought to enlist the services of several attorneys to assist him in bringing the malpractice claim. He did not file his action alleging legal malpractice until December 6, 2012, well beyond the two-year period established by the statute of limitations, and his failure to file his action within the two-year period of discovering the injury bars his complaint against Graham and Trueblood & Graham.

[26] To the extent Myers argues he could not file suit for legal malpractice until he had exhausted other remedies available to him, or a court had otherwise vacated his conviction citing *Heck* and *Scruggs*,[11] we have previously held that a criminal defendant does not have to prove his innocence or exhaust post-conviction remedies before he files a legal malpractice claim, and that a legal malpractice claim accrues for purposes of the two-year statute of limitations period as of the date, through the exercise of ordinary diligence, a person could discover that he has sustained injury due to the actions of another. *See Godby v. Whitehead*, 837 N.E.2d 146, 148-151 (Ind. Ct. App. 2005) (explaining that

---

[11] These cases did not involve legal malpractice claims.

Appellant's civil action for legal malpractice based on Attorney's failure to assert a claim for ineffective assistance of appellate counsel in a petition for post-conviction relief, the malpractice claim accrued when Attorney failed to present a claim that Appellant was denied the effective assistance of appellate counsel, and that there is no requirement of proving innocence or exhausting post-conviction remedies before filing a claim for legal malpractice), *trans. denied*; *Silvers*, 682 N.E.2d at 818 (concluding that "the well-settled discovery rule should govern the timeliness of legal malpractice actions by criminal defendants"); *Diaz v. Carpenter*, 650 N.E.2d 688, 692 (Ind. Ct. App. 1995) (noting that a prison inmate discovered that legal malpractice had occurred when he read a copy of a brief prepared for his post-conviction appeal that did not include an argument favorable to his cause and the date he read the brief was the accrual date for purposes of the two-year statute of limitations period), *cert. denied*, 516 U.S. 1013, 116 S. Ct. 572 (1995).

[27] Accordingly, the trial court did not err by granting summary judgment in favor of Graham and Trueblood & Graham based on Myers's failure to file his action within the applicable two-year statute of limitations.

*B. Hutchison & Maxson*

[28] Myers maintains that summary judgment should not have been granted in Hutchison's favor. He asserts that Hutchison's actions in defending him at his trial on the battery charges were "outside the scope of [her] employment" as a public defender and points to her failure to "adequately proffer the Criminal

Rule 4 defenses and investigate and prepare for trial, with respect to the booking photo and available defenses" as falling outside the scope of her employment. Appellant's Brief at 9, 12. He contends that the post-conviction court's conclusion that Hutchison was ineffective "collaterally, amounts to malpractice" and was thus outside the scope of her employment. Appellant's Reply Brief at 1.

[29] Myers asserts that Maxson's actions during the battery trial amounted to "a Brady type due process violation," that Maxson withheld "injuries allegedly sustained to him during a fight, were evidence exculpatory to the criminal prosecution" and that Maxson's "false report and fabrication of evidence . . . hindered the process of preparing his defense." Appellant's Brief at 23. He further contends that Maxson is not entitled to witness immunity because of his fabricated testimony and that Maxson's alleged false police report and fabricated testimony were outside the scope of his employment as a police officer and should have been a question for a jury. Myers asserts that because he alleges Maxson's actions to be outside the scope of his employment, that assertion "negates the requirement of a notice of tort." Appellant's Reply Brief at 2.

[30] Hutchison argues that the designated evidence establishes that her representation of him was within the scope of her employment, that even if his allegations that her failure to object to the scheduling of his trial date and failure to enter his booking photograph into evidence were true, such actions were

within the scope of her employment, and that Myers has failed to designate evidence to show that her actions were outside the scope of her employment.

[31] Maxson argues that Myers's alleged *Brady* claim, based on federal law, is insufficient and untimely, that he failed to comply with the ITCA's notice requirements, that his state law claim is otherwise barred by the statute of limitations, and that Maxson is entitled to witness immunity because Myers's allegations stem from what Maxson did or did not do as a witness at trial.

[32] The ITCA governs lawsuits against political subdivisions and their employees. *Irwin Mortg. Corp. v. Marion Cnty. Treasurer*, 816 N.E.2d 439, 445 (Ind. Ct. App. 2004). The ITCA provides that a claim against a political subdivision is barred unless notice is filed with (1) the governing body of the political subdivision and (2) the Indiana Political Subdivision Risk Management Commission, within 180 days after a loss occurs. Ind. Code § 34-13-3-8. For purposes of the ITCA, a county public defender's office and a city's police department are political subdivisions. Ind. Code § 34-6-2-110(1), (3). Where a plaintiff elects to sue a governmental employee in his or her individual capacity, "notice is required only if the act or omission causing the plaintiff's loss is within the scope of the defendant's employment." *Bienz v. Bloom*, 674 N.E.2d 998, 1004 (Ind. Ct. App. 1996), *reh'g denied*, *trans. denied*. The ITCA provides substantial immunity for conduct within the scope of a public employee's employment "to ensure that public employees can exercise the independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Irwin Mortg. Corp.*,

816 N.E.2d at 445; *see also* Ind. Code § 34-13-3-3 (setting forth twenty-four separate categories for which immunity attaches). Compliance with the ITCA is a question of law for the court to decide. *Id.* Generally, whether the tortious act of an employee is within the scope of employment is a question of fact; however, under certain circumstances the question may be determined as a matter of law. *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003).

[33] Initially, we observe that the designated evidence shows that the conduct of which Myers complains was within the scope of Hutchison and Maxson's employment. "[I]n order for an employee's act to fall 'within the scope of employment,' the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008) (quoting *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000)). All of the allegedly injurious actions upon which Myers's tort claims against the individual defendants, Hutchison and Maxson, were based were performed squarely within the context of their roles as a county public defender and a city police officer. Our review of the record shows that Hutchison discussed using Myers's book-in photo and explained to him the risks of re-calling a witness whose testimony related to an inconsistent statement made by Norris, the victim in Myers's battery case, which would also reveal to the jury Myers's drug use, before she allowed Myers to make the final decision on both of those issues. As to Hutchison's actions and role in the Criminal Rule 4(C) violation, her actions were not so far

removed from furthering her employer's business so as to be considered outside the scope of her employment.

[34] As to Maxson, our review of the record shows that he arrested Myers, created a police report, and later testified at trial that he could not recall Myers's appearance at the time his book-in photo was taken, actions which occurred more than two years prior to trial. Maxson's actions were not removed from performing his duties as a police officer so as to be considered outside the scope of his employment.

[35] We turn next to the arguments related to the ITCA. Myers states that the correspondence he sent beginning in April 2011 and continuing through the filing of his complaint to Hutchison and to Masson, the Tippecanoe County Civil Attorney, was "reasonably calculated to provide [Hutchison] and her employer of [his] claims and substantially compl[ies] with the provision[s]" of the ITCA. Appellant's Brief at 14. As to Maxson, Myers contends that he filed a notice of tort claim and states that he supported that claim with the material attached to his motion for relief from judgment.

[36] Hutchison points out that Myers failed to provide notice of his intent to file a tort claim to the appropriate governing body and that the deadline for providing such notice has expired. Hutchison also maintains that the letters Myers sent to her and to Masson do not substantially comply with the ITCA. Maxson maintains that Myers failed to provide proper notice of his claim and any such

claim is otherwise barred by the statute of limitations, both of which prevent the reversal of summary judgment.

[37] The allegations Myers makes as to Hutchison's alleged legal malpractice surfaced on February 24, 2005, when Myers suspected that she may have failed to identify a Criminal Rule 4(C) issue regarding the scheduling of his trial and filed a *pro se* motion for dismissal on that basis. When Myers's trial was scheduled on March 11, 2005, for June 28, 2005, his legal malpractice claim began to accrue against Hutchison. To comply with the ITCA, Myers was required to prepare and submit a notice of tort claim form within 180 days of that date. *See Silvers*, 682 N.E.2d at 818.[12]

[38] Myers's letters to Hutchison, which were not received until late April or early May 2011, well after the period within which to file a notice of claim do not contain the statutory standard form and content of the notice required by the ITCA. As set forth in Ind. Code § 34-13-3-10, the ITCA provides that the notice

> must include the following information in a short and plain statement: (1) the circumstances that brought about the loss, (2) the extent of the loss, (3) the time and place the loss occurred, (4) the names of all persons involved if known, (5) the amount of

---

[12] Hutchison notes that even assuming the date the trial began, June 28, 2005, is the accrual date for purposes of calculating the ITCA's 180-day filing requirement, Myers did not timely file his notice of tort claim.

damages sought, and (6) the residence of the person making the claim at the time of the loss and at the time of filing the notice.

Myers's correspondence does not meet these requirements and much of it is memoranda of his legal research and his interpretation of the law relative to his demands. *See Chang v. Purdue Univ.*, 985 N.E.2d 35, 52-54 (Ind. Ct. App. 2013) (observing that communication with the entities and individuals in a case involving the ITCA without apparent regard to the ITCA's notice requirement cannot qualify as substantial compliance), *reh'g denied*, *trans. denied.* There is no indication that the proper government entity or Indiana Political Subdivision Risk Management Commission received any notice of his intent to file a tort claim. He acknowledges that he did not send a notice of tort claim to the Tippecanoe County Board of Commissioners. We cannot say that the correspondence demonstrated that Myers substantially complied with the ITCA's notice requirements; thus summary judgment in favor of Hutchison was proper.

[39] As to his state law claims against Maxson, Myers asserts that he complied with the notice requirements of the ITCA and points to a letter he had attached to his Trial Rule 60 motion for relief from judgment. However, the letter was not included in the designated evidence and thus not considered by the trial court, and accordingly we may not consider the letter. *See LaCava v. LaCava*, 907 N.E.2d 154, 161, n.6 (Ind. Ct. App. 2009) (observing we may consider only that evidence properly designated to the trial court). As we noted above, Myers does not appeal the denial of his motion for relief judgment.

[40] Regarding Myers's alleged *Brady* violation against Maxson, we observe that *Brady* applies to situations in which "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196-1997. "To establish a *Brady* violation, a defendant must show '(1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial.'" *Stephenson v. State*, 864 N.E.2d 1022, 1056-1057 (Ind. 2007) (quoting *Conner v. State*, 711 N.E.2d 1238, 1245-1246 (Ind. 1999), *reh'g denied*, *cert. denied*, 531 U.S. 829, 121 S. Ct. 81 (2000)), *reh'g denied*, *cert. denied*, 552 U.S. 1134, 128 S. Ct. 1871 (2008). At trial, Myers was aware of the book-in photo and Maxson's testimony regarding his recollection of Myers's physical appearance at the time of arrest, and he does not cite to Maxson's allegedly fabricated police report regarding his injuries. Thus, *Brady* is not implicated and Myers is not entitled to a reversal of summary judgment on this basis. *See Williams v. State,* 714 N.E.2d 644, 648-649 (Ind. 1999) (recognizing if the favorable evidence becomes known to the defendant before or during the course of trial, *Brady* is not implicated), *cert. denied*, 528 U.S. 1170, 120 S. Ct. 1195 (2000).

[41] Also, to the extent that Myers challenges Maxson's testimony, Maxson is entitled to witness immunity. *See Rehberg v. Paulk*, 132 S. Ct. 1497, 1505 (2012) (noting that trial witnesses are generally immune from claims based on the witnesses' testimony). We also note that a suit against a public officer is subject

to a five year statute of limitations. *See* Ind. Code § 34-11-2-6 (providing that actions against public officers "growing out of a liability incurred by doing an act in an official capacity, or by the omission of an official duty, must be commenced within five (5) years after the cause of action accrues"). Even assuming Myers had complied with the ITCA's notice requirements, his December 6, 2012 complaint alleging state law claims against Maxson would have accrued at least by September 29, 2005, the date Myers was sentenced, and accordingly Myers's claims would be barred based on his failure to bring the action within the period established by the statute of limitations.

[42] The trial court did not in err in granting summary judgment to Hutchison and Maxson.

## *Conclusion*

[43] For the foregoing reasons, we affirm the summary judgment entries of the trial court in favor of the Appellees.

[44] Affirmed.

Kirsch, J., and Mathias, J., concur.